343 So.2d 977 (1976)
STATE of Louisiana, Relator,
v.
Craig CULOTTA et al., Respondents.
No. 57976.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 20, 1976.
Dissenting Opinion April 6, 1977.
*978 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Sheila C. Myers, Asst. Dist. Atty., for plaintiff-relator.
William Noland, New Orleans, for respondent Bruce Hardy.
William J. O'Hara, III, New Orleans, for respondent Craig Culotta.
TATE, Justice.
On the application of the state, we granted certiorari, La., 332 So.2d 865 (1976), to review the trial court's suppression of certain evidence as illegally seized. The principal issue concerns the standing of the defendants to contest the legality of the search and seizure insofar as based on evidence obtained as the result of an illegal arrest of third persons. See La.Const. of 1974, Art. 1, Section 5.

(1)
The defendants are charged with illegal possession of certain drugs with intent to distribute them. The place of the offense is shown to be 850 Florida Boulevard, Rear, New Orleans. The drugs were found pursuant to a search and seizure of these premises as authorized by a search warrant.
Two of the defendants filed motions to suppress the drugs as illegally seized. The essential basis of the motions was that the search warrant was invalid, because the affidavit used to procure it was inadequate to furnish grounds for authorization for the search.
The trial court sustained the defendants' contention. In holding the affidavit insufficient, the trial court concluded that: (a) much of the information contained in the affidavit was based on "double hearsay" and thus did not meet the reliability constitutionally required for validity of a search warrant based upon such an affidavit; and (b) some of the information was obtained because of the illegal arrest of third persons, which the defendants had standing to contest, if a basis of the present search, by reason of our state constitution of 1974.

(2)
In State v. Paciera, 290 So.2d 681 (La. 1974), we summarized the principles applicable. We first noted that a search warrant may not be issued upon an affidavit indicating that the affiant has reasonable cause to suspect that the object of the search is in the premises. The affidavit must recite facts establishing to the satisfaction of the magistrate who issues the search warrant that probable cause exists to search the premises for the object sought.
In summarizing the constitutionally-mandated test of reliability, we stated, 290 So.2d 685-86:
"* * * The affidavit submitted to the magistrate may be based entirely upon hearsay, but, if so, it must set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find reliable both the informant and the information given by him. Factors which support the credibility of an unidentified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the credibility of the information reported include (a) direct personal observation by the informant, or (b), if the information came indirectly to the informant, the reasons in sufficient factual detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectly-obtained information."
In State v. Paciera we specifically rejected contentions similar to the present that "double hearsay" information could not per se be considered sufficiently reliable to justify issuance of a search warrant. Providing *979 that the affidavit meets the tests of both reliability of informant and information above set forth, a search warrant may be validly based upon hearsay information which demonstrates a substantial factual basis for the search.
In Paciera (as in the present case), the affidavit was executed by one police officer based substantially upon information furnished by him by other identified police officers. The information was based upon these non-affiant officers' own personal observations, as well as upon informational leads furnished to them by an un identified informant known by them (but not by the affiant) to be reliable, for reasons sufficiently set forth in the affidavit.
We concluded, citing United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), that an affidavit may be sufficient, "even if based entirely upon hearsay, when the detailed and specific showing made by it afford[s] a `substantial basis' for crediting the hearsay due to corroborating circumstances shown." 290 So.2d 686-87.
Paciera may also be considered as authority for holding that information furnished to an affiant police officer by other identified police officers, based upon their own first-hand observations, may be considered reliable; as may information furnished to these non-affiant identified police officers by an un identified informantproviding, as to this latter information, the affidavit itself set forth sufficient factual specificity to credit the reliability both of the unidentified informant and of the information furnished by him to the non-affiant officers.
As will be shown in more detail, we find that the present affidavit meets the test of constitutional reliability set forth by Paciera.

(3)
Before discussing the present affidavit, however, it may be well to note that, in both the cited decision and the present instance, the affidavit was substantially based upon substantial reliable and corroborating factual information established by first-hand observation of identified police officers, while the specific and detailed factual data secured from the unidentified informant (shown by the affidavit to be reliable) was in the nature of the initiating leads by which the police officers secured first-hand corroborating information justifying the search.
We emphasize that we are not here concerned with an affidavit where the probable cause for the search is furnished entirely by the information secured from an unidentified informant, known to be reliable not by the affiant but instead only by the hearsay report to the affiant by yet another officer, without other corroborating circumstances shown (as here) by further investigation by the police officers. As to such an affidavit, the issuing magistrate (or the reviewing court) might well wish to determine why the affidavit is not executed by the police with the first-hand report, rather than by another officer merely relaying on to the magistrate such information but without affording the magistrate an immediate opportunity to question the source of the information with regard to its reliability.
On the other hand, where as here the probable cause for the search warrant is shown by the correlation of information obtained by police investigation from numerous sources, we do not believe that the constitution mandates that each officer involved swear out a separate affidavit verifying each chain in the link of probable cause. Providing that the specific and detailed factual showing of information obtained by identified police officers meets the Paciera tests of reliability, we believe the affidavit to be sufficient if sworn to by only one or more of the police officers with personal knowledge as to some of the factual details of the showing, together with his (their) sworn statement of the report to the affiant(s) of the factual details within the personal observation or knowledge of identified non-affiant officers.

(4)
The application to search the premises at 850 Florida Boulevard for illegal drugs was *980 executed by police officers McNeil and Barrere of the New Orleans Police Department. The affidavit shows that these officers participated in the surveillance of 850 Florida Boulevard, pursuant to information received from an identified Jefferson Parish detective, and it also shows certain information concerning an arrest made of two third persons by Orleans Parish police officers after these third persons had left the premises while under surveillance.
The affiants testified to factual information received (a) from Jefferson Parish Detective Schwabe and (b) concerning events in Orleans Parish after the affiants became involved in the surveillance of the Orleans premises searched.

(5)
The affidavit shows that the affiants received the following factual information from Jefferson Detective Schwabe:
1. A confidential informant, of recited past reliability in furnishing him reliable information, told Schwabe that he had personally been shown a large amount of drugs in a large cardboard box inside 817 Pasadena premises in Jefferson Parish (not the Orleans Parish premises searched). The informant there spoke with "Whitey", a white male aged about 25, and another white male not known to him. They told the informant that the drugs had been procured from a drug store theft and that they intended to bring them into New Orleans on Wednesday (July 30), shortly after the conversation, to distribute them at retail.
2. The informant told them that "Whitey" drove a blue Volkswagon with a Baton Rouge or "A" license plate.
3. As a result of this information, Jefferson Parish officers Sigur and Whitehead initiated a surveillance of 817 Pasadena. These officers saw a blue 1969 Volkswagon, with license plate 132 A 283, parked in front of the premises. Shortly thereafter, two white males exited from the premises carrying a large cardboard box and entered the Volkswagon. These officers followed the Volkswagon into Orleans Parish. At this time, the Jefferson officers called one of the affiants, and the affiants and other Orleans narcotics officers proceeded to the scene.

(6)
At this time, we should note: The above information meets the Paciera tests as to reliability.
Schwabe, an identified police officer, is a reliable source of information, as are the identified Jefferson Parish officers whose observations were reported by him to the affiants. The information received by the affiants from these latter police officers is also reliable, since the affidavit set forth specific and detailed facts based upon their own personal observation during their surveillance.
Likewise, the affidavit demonstrates the reliability of Schwabe's confidential informant, based upon reliable information obtained from him in the past which led to numerous arrests and subsequent convictions. The specific and detailed information obtained from this informant is also indicated as reliable, since based upon his own personal observation and upon his report of activity adverse to his own penal interest. State v. Turner, La., 337 So.2d 1090 (Rendered June 21, 1976); United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Likewise corroborative of the reliability of his information (although not in itself probable cause for a search) is the specific information furnished by him as to the prospective use of a described vehicle in the intended transaction, insofar as this information was independently somewhat corroborated by the subsequent appearance of this vehicle at the scene, in accordance with the informant's prior report that it would arrive. Cf. State v. Marks, La., 337 So.2d 1177, rendered October 6, 1976.

(7)
The affidavit continues by setting forth information gained after the affiant police officers arrived in the vicinity of 850 Florida Boulevard, the premises subsequently *981 searched pursuant to the instant search-warrant. The Orleans officers were met by Jefferson Officer Sigur, who informed them that the two white males had exited the Volkswagon and entered the rear premises of 850 Florida Boulevard. The affidavit does not show that Officer Sigur saw them carry the cardboard box into the premises.
We should at this point note, as the trial court held, that probable cause to search 850 Florida Boulevard is not thus far demonstrated by the facts above set forth. At the most, reasonable suspicion is shown to exist that the illegal drugs (initially observed by the unidentified informant) were in the residence. This might justify further police investigation, but not probable cause to search this residence.

(8)
The sufficiency of the affidavit and the validity of the search-warrant will, therefore, depend upon whether this initial showing (which justifies a reasonable suspicion of the premises) may be supplemented by the further facts shown by the affidavit after the Orleans officers joined in surveillance of the suspected premises with the Jefferson officers.
These relevantly show:
An hour or so later, two other white males (later identified as Piazza and Edenfield) exited the premises and entered a maroon Ford pickup. The vehicle was followed by three non-affiant officers (Jefferson Officer Sigur and Orleans Officers Kirkpatrick, Venezia, and Lewis). These officers subsequently stopped the Ford as it drove into a parking lot some distance away, and they arrested the occupants (Piazza and Edenfield) for illegal possession of narcotics discovered by subsequent search of the vehicle. After being Mirandaized as to their rights, Piazza and Edenfield gave a written statement indicating that they had purchased the drugs from inside of 850 Florida Boulevard from Hardy (alias "Whitey") and Craig Culotta, defendants therein.
The trial court correctly held that, under the showing, the drugs secured from Piazza and Edenfield were the product of an illegal arrest and search and seizure executed without probable case. State v. Kinnemann, La., 337 So.2d 441 (docket no. 57,581, September 13, 1976); State v. Jones, 308 So.2d 790 (La.1975). Likewise, the statement secured as an immediate consequence of the illegal arrest is not immunized from being considered inadmissible by the Miranda warnings, since it is regarded as the fruit of the illegal arrest and search. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
Thus both the drugs seized and the statements taken from Piazza and Edenfield cannot be used as evidence against them.

(9)
Nor, by virtue of the Louisiana constitution, can they be used as evidence against the present defendants, even though the illegal arrest and unconstitutional seizure was not directed against them but instead against third persons. Article 1, Section 5, of the Louisiana Constitution of 1974, specifically provides:
"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court." (Italics ours.)
As the committee report of the constitutional convention states, the specific purpose of the broadened constitutional protection against illegal searches and seizures was to afford standing to third persons aggrieved by the illegality of a search and seizure to contest its validity. The report states, 1 Official Journal of the Constitutional Conventions of 1973, p. 86 (Proceedings *982 of July 6, 1973), with regard to Section 5:
"The 1921 provisions have been changed to stress that communications and property are included in the right to privacy. A search warrant is to include the lawful purpose or reason for the search. In addition, persons protected against illegal searches and seizures include not only the person whose house or property has been illegally searched but also any other person adversely affected by the illegal search." (Italics ours.)
Professor Lee Hargrave summarizes the constitutional debates as to the section. Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L. Rev. 1, 20-24 (1974). He concludes, correctly in our opinion, that it was intended to give standing to third persons adversely affected, and "Thus, if evidence is obtained by an improper search or seizure, it cannot be used against anyone whose guilt it would tend to prove and thus practically cannot be used at all. The scope of the exclusionary rule is thus enlarged, with the expectation that its deterrent effect will be increased." 35 La.L.Rev. 23-24. Accord, Jenkins, The Declaration of Rights, 21 Loyola 9, 29-30 (1975).

(10)
Nevertheless, the practical issue before us is more narrow than whether evidence or statements illegally taken from third persons may be admissible in evidence against the accused. The state does not now attempt to offer the drugs and statements illegally obtained as evidence of guilt of the accused. If it did, for the reasons set forth, such evidence is inadmissible against the accusedif they object to its introduction , not because of its lack of probative value but, rather, to effectuate broad constitutional policies designed to deter illegal governmental arrest, searches, and seizures.
The more-narrow issue before us is: Must evidence secured pursuant to an otherwise valid search-warrant, pursuant to a judicially-authorized search, be suppressed because part (although a crucial part) of the showing of probable cause made by the affidavit includes evidence and statements taken from third persons which, if objected to at the trial of guilt or innocence, are inadmissible against the accused?
In holding that the affidavit in part based upon such illegally obtained evidence was insufficient to authorize a valid search warrant, the conscientious trial court concluded, not unreasonably, that the accused defendants were thereby "adversely affected" by the unconstitutional arrest and search and therefore could contest the validity of both affidavit and search warrant on that ground.
Nevertheless, in this case of first impression, we respectfully differ with the trial court's conclusion:
We do not believe that the scope of the constitutional provision was necessarily intended to exclude from the trial evidence otherwise untainted, secured through a search warrant, because part of the showing made in the affidavit used to secure the warrant is based upon evidence illegally obtained from third persons and inadmissible, if objected to at trial, against either them or the accused. (If the sole basis of the affidavit was such illegally-secured evidence, our conclusion might well be different.)
Examining the issue before us more closely, the probable-cause sufficiency of the affidavit is established if, in addition to the facts alleged up to the surveillance of 850 Florida Boulevard, the magistrate could validly consider the statements of Piazza and Edenfield, following their illegal arrest and search, that they had purchased the drugs in their possession from 850 Florida Boulevard. These statements, as we have noted, are inadmissible as evidence against Piazza and Edenfield, being the "fruit" of an unconstitutional arrest and search, Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and are also inadmissible for the same reasons as evidence against the present defendants, who have standing to urge that they were unconstitutionally obtained, Article 1, Section 5, La. Constitution of 1974.
*983 Thus, we are asked to suppress evidence secured after search pursuant to a judicially-authorized warrant, because on the allegations of the affidavit used to procure the warrant the evidence includes statements taken from third persons. The statements thus taken are alleged to have been improperly considered by the magistrate, because (if objection were made) those objecting could complain that the statements were the fruit of an illegal arrest and search and seizure.
The individual protections and deterrent policies constitutionally expressed by our provision against unreasonable searches and seizures, and giving standing to any person aggrieved thereby, may require suppression of (a) the drugs seized in the illegal arrest and (b) the statements of third persons which were the fruit of the illegal search (inadmissible jurisprudentially to effectuate the deterrent effect against governmental misconduct by suppressing the fruits thereof).
Nevertheless, we do not believe that the protections and policies so expressed by our constitution require us to hold invalid also (c) the affidavit based in part on the statement taken as a fruit of the invalid arrest of these third persons, (d) the search warrant otherwise valid except insofar as in part based (not on the unreasonable search of the third persons, but) upon the statement taken, and (e) the evidence seized as a result of the search pursuant to the judicially authorized search warrant. To hold that an initial governmental illegality invalidates all subsequent regularly-conducted governmental investigations and actions, no matter how attenuated the connection between the initial illegality and action presently attacked, is to afford a meaning beyond, in our opinion, the contemplated scope of the individual protection intended by our constitutional provision.
Here, for instance, the statement of the third persons included in the affidavit was not itself secured by an unreasonable search or seizure of persons or property, such as is prohibited by Article 1, Section 5. It is, however, a fruit of such an illegal arrest and search. The statement is therefore held to be inadmissible in order to inhibit governmental agents from violating the constitutional protection against illegal arrests and searches. The point we re-emphasize is that the taking of the statement itself does not directly offend the constitutional prohibition: The courts hold it inadmissible as evidence in order to re-enforce the deterrent effect of violations of the basic constitutional provision against unreasonable searches and seizures, not because the constitutional provision itself is violated by the statement taken.
In order to effectuate the constitutional protection, we are not required to hold that not only the statement itself is inadmissible, but also other evidence otherwise lawfully secured is likewise inadmissible, because one of the links in the chain of causation consisted of the statement.
Insofar as the present evidence seized pursuant to a search executed by a judicially-authorized warrant, we therefore conclude that the defendants were not "adversely affected", within the meaning and purpose of the constitutional provision, by the prior illegal arrest and seizure of the third persons in violation of Article 1, Section 5, Louisiana Constitution. In our view, the causal connection between the initial unlawful conduct and the evidence actually sought to be suppressed has become so attenuated as to dissipate its initial taint, nor are the deterrent policies and individual protections expressed by the constitutional provision violated by so holding. See: State v. Jenkins, La., 340 So.2d 157 (Rendered October 14, 1976); United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); Annotation, Evidence "Fruit of Poisonous Tree", 43 A.L.R.3d 385, Section 8 (1972).
As stated in State v. Jenkins, at 340 So.2d 174: "In determining whether information obtained by officers in the conduct of an unlawful search was used to acquire other evidence against an accused, the test to be applied is not whether, but for the illegal search the evidence would not have been obtained, but rather `whether, granting establishment *984 of the primary illegality, the evidence to which objection is made has been come at by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"
We therefore hold that Article 1, Section 5, does not require suppression of the evidence seized as a result of the judicially authorized search pursuant to the otherwise valid warrant. The present defendants were not "adversely affected", within the constitutional meaning, by the initial illegal arrest and search of third persons, because with regard to the present search warrant, (a) the complained-of illegality is so attenuated in connection with the obtaining of the present evidence here sought to be suppressed, and (b) the means by which such present evidence was obtained are sufficiently distinguishable from the initial illegal arrest and search of the third persons.

Decree
Accordingly, we reverse the judgment of the district court, and we overrule the defendants' motion to suppress certain evidence. We remand this case to the district court for further proceedings in accordance with law.
REVERSED AND REMANDED.
SANDERS, C. J., concurs.
SUMMERS, J., concurs in result only.
MARCUS, J., concurs and assigns reasons.
DENNIS, J., dissents with reasons.
MARCUS, Justice (concurring).
The majority correctly holds that the search in the instant case was lawfully conducted pursuant to a warrant based on probable cause and that art. 1, § 5 of the 1974 Louisiana Constitution does not compel the exclusion from a probable cause determination of evidence or statements obtained from third parties as a result of an illegal search or arrest.
In reaching this result, however, the majority construes La.Const. art. 1, § 5 to grant individuals a new and expanded right of standing to contest the use against them, at a trial on the merits, of evidence obtained in violation of the fourth amendment rights of others. The majority relies in its interpretation on certain statements recorded in the official journal of the constitutional convention. In State v. Roach, 338 So.2d 621 (La., 1976), a similar constitutional interpretation was suggested based largely on the convention debates and proceedings. Whether or not these extrinsic sources evidence an intent on the part of the convention delegates to create standing rights here recognized by the majority, it seems clear, in my opinion, from a reading of art. 1, § 5 that this intent was not translated into words and embodied in the constitutional provision.
It is well settled that the language of a constitutional provision is to be applied according to the most usual signification in which the words are generally understood. State v. Bradford, 242 La. 1095, 141 So.2d 378 (1962). Where a constitutional provision is plain and unambiguous, construction is excluded and no search for purpose and intent can be initiated. State v. Clark, 186 La. 655, 173 So. 137 (1937). This is particularly true with respect to the interpretation of a constitution, since it is presumed that the language of a constitution is selected with the utmost discretion. Western Union Telegraph Co. v. Railroad Commission, 120 La. 758, 45 So. 598 (1908).
La.Const. art. 1, § 5 (1974) provides as follows:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have *985 standing to raise its illegality in the appropriate court.
On its face, this constitutional provision grants a broad substantive right to every person to be free from unreasonable governmental interference. I consider that the last sentence of the provision only confirms that any person whose rights, as set forth in the first part of the section, are violated has standing to urge the illegality of such conduct in an appropriate court. This interpretation of art. 1, § 5 is supported by the customary and usual meaning of the language in which it is written and is consonant with the federal conception of fourth amendment rights and the exclusionary rule fashioned to protect them in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1963). Also, it is in accordance with the United States Supreme Court decision in Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). Conversely, I feel that the interpretation of the majority reads into the provision substantive rights not plainly set forth therein. Moreover, it is not in conformity with recent expressions of the United States Supreme Court demonstrating a studied reluctance to expand the scope and application of the exclusionary rule in the absence of clear proof that such extensions would have a significant effect on deterring illegal police conduct. Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).
In my opinion, the majority incorrectly relies on extrinsic sources in its interpretation of La.Const. art. 1, § 5 (1974) where the language is clear and unambiguous. After all, the people of this state approved by their ballots the constitution, not convention journals and debates. Accordingly, I respectfully concur.
DENNIS, Justice, dissenting.
Although I fully agree with the majority's general statements concerning the expansion of the ambit of protection against unreasonable searches and seizures contained in the Louisiana Constitution of 1974, see State v. Roach, 338 So.2d 621 (La.1976), I must respectfully dissent. I recognize that the use of the illegally seized evidence for the purpose of obtaining a search warrant is one step removed from using it as evidence at trial, which the majority correctly states would be prohibited. However, in my opinion, the effect upon the defendant by the unlawful search is too direct to be characterized as "attenuated" and does "adversely affect" the defendant in a manner against which the delegates and voters sought to grant protection in Article I, § 5 of the Louisiana Constitution of 1974.