351 So.2d 434 (1977)
STATE of Louisiana
v.
Larry HERBERT.
No. 58726.
Supreme Court of Louisiana.
April 11, 1977.
On Rehearing October 10, 1977.
Rehearing Denied November 11, 1977.
*435 Willam Noland, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Diana M. Shields and Larry Herbert were charged by the Orleans Parish Grand Jury with the December 12, 1975 violation of Section 966 of Title 40 of the Revised Statutes in that they did willfully and unlawfully have in their possession with intent to distribute a controlled dangerous substance, heroin. The charge against Diana M. Shields was nolle prossed on April 14, 1976, and on that same day Larry Herbert was tried by a jury and found guilty as charged. He was sentenced "to serve life at hard labor in the custody of the Director of the Department of Corrections."

I.
Defendant asserts that the trial judge erred in not granting a continuance when the State moved to sever Diana. Shields from the case and nolle prossed the charge against her on the day the case was set for trial. The State then announced that a separate bill of information would be filed against Shields for attempted possession of heroin with intent to distribute. When the trial judge granted the motion to sever, counsel for Herbert objected that the action of the State would affect his planning and preparation for trial.
When the State's attorney announced that he had informed defense counsel two weeks prior to the date of trial that this action would be taken, defense counsel countered that he had been informed that Shields would be allowed to plead, not that the State would move to sever her from the case and file a new bill of information against her.
That action, according to Herbert's counsel, would affect his presentation of evidence, and he accordingly moved for a continuance, which the trial judge denied. The trial judge was of the opinion that the nolle prosequi of the Shields charge and the motion for severance were no surprise to defense counsel since he knew approximately two weeks prior to trial that Shields would either be severed or be allowed by the District Attorney to plead to a lesser included charge. He was further of the opinion that Herbert's counsel could in no manner show where he or his client would be prejudiced.
A number of arguments advanced by defense counsel here in brief based upon facts which form no part of the record are not considered.
The essence of the defense contention on this record is surprise and, according to the trial judge and the State's attorney, there is no basis for a claim of surprise. If defense counsel was advised two weeks prior to trial *436 that Shields would be allowed to plead, as the defense contends, the consequence of such a plea would be to withdraw Shields from the case, in any event, and the defense planning and presentation of evidence should have taken that effect of a plea into account.
No acceptable showing of prejudice was made on behalf of the defense, and there is no abuse of the discretion vested in the trial judge in such cases. La.Code Crim.Pro. arts. 707, 712.

II.
In a motion to suppress, counsel for Herbert alleged that his constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 5, of the Louisiana Constitution have been violated in that evidence to be used against him at the trial, namely a quantity of heroin, was not seized in compliance with the United States and Louisiana Constitutions.
At a hearing held on the motion to suppress on April 14, 1976 Officer David Peralta of the Tactical Patrol Section of the New Orleans Police Department testified for the State. About three o'clock in the afternoon of a clear day on December 12, 1975, he said, he was riding with Officer Jenkins who was driving a marked patrol car. They were in uniform and cruising in an area of the Sixth District when they noticed a large number of "self-admitted" narcotic addicts in the area of Washington Avenue and South Robertson Street. In the courtyard of the housing project at that location a Negro male dressed in blue was observed as he walked toward another Negro male wearing a large white, knit hat. As these men met, a small object was handed to the man wearing the white knit hat and they parted.
Officers Peralta and Jenkins decided to investigate this activity and headed the patrol car in the direction taken by the man dressed in blue. After driving around the neighborhood for a while they finally pulled into a driveway in the 2800 block of South Robertson Street. As they were pulling into the driveway, they observed a Negro male, wearing a white knit hat, later identified as Larry Herbert, and a Negro woman, later identified as Diana Shields, between two buildings in the rear of 2800 South Robertson about thirty-five feet away. It was then about 3:27 in the afternoon.
As the officers neared Herbert and Shields, Herbert was observed handing a small box to Shields. When they were ten to fifteen feet from them Herbert looked over his shoulder, noticed the police car and hurriedly handed Shields the small box. Herbert and Shields ran in opposite directions as the officers drew abreast of them, while Officer Peralta got out of the police car and went after Shields. He noticed she was trying to place a matchbox in the waistband of her slacks as he approached her. Seeing this he advised her that she was under arrest for possession of narcotics. He then seized the matchbox, opened it and found that it contained a number of tinfoil packets. Upon opening one of the tinfoil packets, it was found to contain a brownish powder which Officer Peralta believed to be heroin.
During this encounter with Shields, Officer Jenkins pursued Herbert as he fled toward one of the project buildings. He overtook Herbert and returned with him to where Officer Peralta held Shields. When Peralta told Jenkins that he had placed Shields under arrest and had seized a matchbox of heroin from her waistband, Jenkins also arrested Herbert.
The Fourth Amendment protects an individual's reasonable expectations of privacy in his person and property from unreasonable invasions of those interests by the Government. United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). That which is knowingly exposed to the public is not protected. United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973).
*437 With the possible exception of the case in which private premises must be entered to make an arrest, there is presently no constitutional requirement that an arrest warrant be obtained. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). A warrantless arrest is reasonable under the Fourth Amendment where the arresting officer has probable cause to believe that the defendant is committing or has committed a felony or expected misdemeanor. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).
Thus a valid arrest may occur when the circumstances known to a reasonable, prudent police officer by personal observation amount to a felony or misdemeanor committed, or attempted in his presence or view. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948).
Although a police officer may not arrest upon mere suspicion, Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), or for "investigation", Bennett v. United States, 70 App.D.C. 76, 104 F.2d 209 (1939), he has a duty to approach, Lee v. United States, 95 U.S.App.D.C. 156, 221 F.2d 29 (1974), confront and interrogate (which may include the power to temporarily detain). It is the most useful, most efficient, and most effective method of investigation. Often it develops probable cause, Keiningham v. United States, 113 U.S.App. D.C. 295, 307 F.2d 632 (1962).
The validity of the subsequent search and seizure turns on the question of when the arrest occurred. Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Henry v. United States, supra. In order for there to be an arrest it is not necessary that there be an application of actual force or manual touching of the body, or physical restraint visible to the eye, or a formal declaration of arrest. It is sufficient if the person arrested understands that he is in the power of the one arresting, and submits in consequence thereto. Kelley v. United States, 111 U.S.App.D.C. 396, 298 F.2d 310 (1961).
Furthermore, deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime they are proper factors to be considered in the decision to make an arrest. Peters v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).
Upon effecting a lawful arrest and when the accused is in police custody, the officer may search the accused's property, the possession of which is a crime, such as heroin. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1974). And under the plain view doctrine, an officer may also seize items which come into view incident to an arrest, where the officer is lawfully present, the discovery is inadvertent, and the object is incriminating. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
Based upon these principles and a realistic appraisal of the facts known to Officers Peralta and Jenkins, probable cause existed to arrest and search Shields and to arrest Herbert for possession of heroin.
In the setting of this project, where a number of "self-admitted" narcotic addicts were present at the time, two Negro males made a furtive exchange of a small object and promptly parted. Within minutes thereafter one of these men was seen to hand a small box to a woman in a furtive manner. And when they observed the uniformed policemen approach in a marked car they fled in opposite directions. The woman was then seen to be secreting a matchbox in the waistband of her slacks. She was arrested and the matchbox, which the officers believed probably contained narcotics, was seized.
The experience of these officers, the presence of known addicts at the scene of the first encounter; the use of matchboxes to disguise the transfer of narcotics, a modus operandi with which they were undoubtedly *438 familiar, State v. Roach, 338 So.2d 621 (1976); State v. Saia, 302 So.2d 869 (1974), cert. denied, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975), the furtive conduct of the participants, the effort to flee the scene when the police were noticed approaching, and the secreting of the matchbox in her waistband by Shields, all gave eloquent evidence of the surreptitious and clandestine distribution of narcotics at that time and place.
There was probable cause for Officer Peralta to seize the narcotics from Shields, it having just been transferred to her by Herbert.
There is no merit, therefore, to the defense contention that the trial judge erred in failing to suppress the heroin.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., dissents and assigns written reasons.
DIXON, J., concurs.
CALOGERO and DENNIS, JJ., dissent.
TATE, Justice, dissenting.
I respectfully dissent. In my opinion, the motion to suppress the heroin seized should be granted: The heroin was seized incidental to an illegal arrest, made without probable cause.
The issue, as I see it, is whether the police may arrest and search any individual because of conduct which in itself is not unlawful, simply because he is in a neighborhood frequented by drug addicts.
In the present instance, Ms. Shields was arrested. Prior to her arrest, the defendant Herbert was observed by the officers to hand her a matchbox. Previously, the officers had noticed Herbert receiving a small object from another individual. None of the three individuals was known to the officers.
The conduct itself, it seems to me, might bear watching by the police; but it does not constitute cause for arrest. Individuals living in America are not subject to arrest because otherwise lawful and innocuous actions might also be consistent with criminal activity. The circumstance that other individuals in the area were narcotics addicts, not shown to be connected with these three, does not in my opinion convert this otherwise lawful conduct (however suspicious) into probable cause for arrest. See Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 947 (1968).
It is true, as the majority notes, that furtive actions and flight at the approach of law officers may be proper factors in the decision to make an arrest.if "coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime," as the majority likewise notes, quoting from Peters v. New York, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904 (1968).
Here, however, the officers had no specific knowledge relating the three individuals to any crime committedonly a strong suspicion that, in the light of the narcotics activity in the neighborhood, these three unknown individuals might somehow be involved in transferring narcotics from one to the other.
For these reasons, in my opinion, the officers did not have probable cause to arrest and search Ms. Shields. The matchbox they seized from her person was therefore unconstitutionally seized in violation of the federal and state constitutions. See State v. Saia, 302 So.2d 869 (La.1974).
Further, although perhaps the officers had sufficient observation to justify reasonable suspicion for a valid investigatory stop, La.C.Cr.P. art. 215.1, the investigatory stop so authorized does not purport to constitute probable cause for an arrest or for a search of the person (nor could it, without offending provisions of the state and federal constitutions. These guarantee individuals living under their protection against arrests without probable cause, and against arbitrary searches of their person except (under present circumstances) incidental to a lawful arrest).
Therefore, fully respecting the majority's fair appreciation of the facts and its common sensical approach, I must nevertheless *439 dissent: However justified their suspicions may turn out, governmental agents may not arrest and search individuals simply because they suspect they might be involved in criminal activity, without violating our constitutional guarantees against arbitrary arrests and searches of the person by the agents of government.

ON REHEARING
TATE, Justice.
The defendant was convicted of possession of heroin with intent to distribute it, La.R.S. 40:966, and sentenced to life imprisonment at hard labor. We granted the defendant's application for rehearing as to our initial affirmance, because we entertained doubt as to the trial court's denial of a motion to suppress the heroin introduced into evidence.
The heroin was seized following the arrest of a Ms. Shields, allegedly a co-conspirator with the accused in the offense. The trial court held that the seizure was lawful, since the warrantless arrest preceding it was based upon probable cause. Upon rehearing, we conclude that this ruling was erroneous and that the heroin is inadmissible.
With regard to the seizure, the central issue is whether the arrest of the co-conspirator was lawful. If so, the seizure pursuant to her previous custodial arrest is also lawful. If not, the seizure of property from her person violated the guarantee of our state constitution against unreasonable searches, seizures, or invasions of privacy of individuals. La.Const. of 1974, I, Section 5.[1]

I.
The arresting officers' testimony show the following uncontradicted account of the circumstances of Ms. Shields' arrest:
Several minutes previously, the two policemen had observed two then-unknown males exchange "something" in their hands and walk off from one another. The officers decided to investigate further. They drove around in the neighborhood attempting to locate the two men, still unknown to them.
Finally, they observed that the present defendant "began to hand something to" Ms. Shields, as they drove their marked patrol car into the driveway of the housing project towards the couple then some thirty-five feet distant. When the patrol car came within ten to fifteen feet of the subjects, the defendant Herbert looked over his shoulder and observed the police car, hurriedly handed Ms. Shields an object and walked away into a nearby house.
Meanwhile, Ms. Shields looked toward the policemen "and then began to somewhat run away from us." The arresting officer noticed that she was trying to place a matchbox in the waistband of her slacks.
The police officer advised Ms. Shields that she was under arrest for possession of narcotics. He then seized the matchbox which, when opened, was found to contain packets of a brown substance later found to be heroin.
According to the officers' testimony, the chief reason they suspected a narcotics offense was that "while we were patrolling, just prior to our arrest of Larry Herbert and Diana Shields, we noticed a large number of self-admitted narcotics addicts in the area of Washington and South Robertson." The state also argues that probable cause to arrest arose from the spontaneous manifestation of guilt, when the defendant Herbert and Ms. Shields, upon seeing the officers, commenced to leave the scene hurriedly.

II.
A warrantless arrest, no less than an arrest pursuant to a validly issued warrant, must be based on probable cause. State v. Ranker, 343 So.2d 189 (La.1977); State v. Jackson, 337 So.2d 508 (La.1976); State v. Scott, 320 So.2d 538 (La.1975); *440 State v. Terracina, 309 So.2d 271 (La.1975); State v. Odom, 292 So.2d 189 (La.1974). Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Marks, 337 So.2d 1177 (La.1976); State v. Randolph, 337 So.2d 498 (La.1976); State v. Gilmore, 323 So.2d 459 (La.1975); State v. Wood, 262 La. 259, 263 So.2d 28 (1972).
While the officer need not have sufficient proof to convict, mere suspicion is not enough to justify an arrest. State v. Ranker, cited above; State v. Randolph, cited above. Further the circumstances upon which the arresting officer acts must show that criminal conduct is more probable than non-criminal activity: Equivocal conduct does not afford probable cause for arrest, where the possibility of criminal conduct is no greater than the possibility of innocent behavior. State v. Thomas and Talbert, 349 So.2d 270 (La.1977).
"Mere suspicious activity, without any relationship to law violation, is not sufficient basis for police interference with the freedom of an individual." State v. Truss, 317 So.2d 177, 179 (La.1975).

III.
Applying these principles to the instant case, no probable cause was manifested to the officers to arrest Ms. Shields for a narcotics violation.
The exchange in public of matchboxes between unknown persons does not by itself indicate any criminal offense. State v. Thomas and Talbert, 349 So.2d 270 (La.1977). Nor does any surmise surmounting mere suspicion attach to the circumstance that two unknown persons, otherwise free of criminal connection, consort in an area frequented by narcotics addicts. Sibron v. New York, 392 U.S. 40, 62, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917.[2]
Accordingly, we note, as we did in suppressing evidence seized as the result of an illegal arrest in State v. Kinneman, 337 So.2d 441, 444 (1976): "These `facts' cannot be said to furnish probable cause for an arrest or search. They do not connect defendants with criminal activity. They are at least as consistent with innocent activity as with guilt."
The state contends, however, that probable cause to arrest ripened when the accused hurriedly handed the object to Ms. Shields and walked away from the scene, after noting the officers' approach, and when Ms. Shields turned as if to run.
Furtive actions and flight at the approach of law officers may indeed be proper factors in the decision to make an arrestif "coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime." Peters v. New York, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904 (1968). Here, however, the officers had no specific knowledge relating the three observed individuals to any crime committedonly a strong suspicion that, in the light of the narcotics activity in the neighborhood, these three unknown individuals might somehow be involved in transferring narcotics from one to the other.
The arresting officer cannot create probable cause for an arrest simply on the basis of a citizen's flight from an arrest otherwise illegal because without probable cause:
As we stated in State v. Saia, 302 So.2d 869, 873 (La.1974): "The police cannot approach citizens under circumstances that make it seem that some form of detention is imminent unless they have probable cause to arrest the individual or reasonable grounds to detain him . . . . Police officers cannot actively create `street encounters' unless they have knowledge of *441 suspicious facts and circumstances sufficient to allow them to infringe on the suspect's right to be free from governmental interference."
We conclude, therefore, that the arrest of Ms. Shields was illegal. Consequently, the heroin seized pursuant to it should have been suppressed as seized in violation of our constitutional guarantees.
The officers fully arrested Ms. Shields for the commission of a crime; they did not merely detain her for questioning. Thus, we do not reach the issue of whether the officers' observation sufficiently justified reasonable suspicion for a valid investigatory stop. La.C.Cr.P. art. 215.1. See State v. Cook, 332 So.2d 760 (La.1976); but see also State v. Smith, 347 So.2d 1127 (La.1977). Nevertheless, the investigatory stop so authorized does not purport to constitute probable cause for an arrest or for a search of the person; nor could it, without violating the constitutional principles previously enunciated, which prohibit governmental agents from unreasonable searches or seizures or invasions of privacy of individuals living under the protection of our state and federal constitutions.

Decree
For the reasons set forth, the defendant's motion to suppress is sustained, and district court's ruling to the contrary is reversed, as is the conviction and sentence of the accused. The case is remanded to the district court for a new trial in accordance with law.
REVERSED AND REMANDED.
SANDERS, C. J., dissents.
SUMMERS, J., dissents and adheres to the original opinion.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
The majority on rehearing holds that the search conducted in the instant case was unlawfully conducted and finds that La.Const. art. 1, § 5 extends to third persons a new and expanded right of standing to contest the use against them, at a trial on the merits, of evidence obtained in violation of the fourth amendment rights of another, citing State v. Culotta, 343 So.2d 977 (La.1977).
In Culotta, this court found the search at issue lawfully made pursuant to a valid warrant. In State v. Roach, 338 So.2d 621 (La.1976), this court found the defendant lacked standing to contest a search made of another person applying the Louisiana Constitution of 1921 and the jurisprudence thereunder. Hence, any opinions expressed in these decisions regarding the meaning of La.Const. art. 1, § 5 (1974) constitutes mere dicta.
It is well settled that the language of a constitutional provision is to be applied according to the most usual signification in which the words are generally understood. State v. Bradford, 242 La. 1095, 141 So.2d 378 (1962). Where a constitutional provision is plain and unambiguous, construction is excluded and no search for purpose and intent can be initiated. State v. Clark, 186 La. 655, 173 So. 137 (1937). This is particularly true with respect to the interpretation of a constitution, since it is presumed that the language of a constitution is selected with the utmost discretion. Western Union Telegraph Co. v. Railroad Commission, 120 La. 758, 45 So. 598 (1908).
La.Const. art. 1, § 5 (1974) provides as follows:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have *442 standing to raise its illegality in the appropriate court. (Emphasis added.)
On its face, this constitutional provision grants a broad substantive right to every person to be free from unreasonable governmental interference. I consider that the last sentence of the provision only confirms that any person whose rights, as set forth in the first part of this section, are violated has standing to urge the illegality of such conduct in an appropriate court. Moreover, the provision grants the right of a person to "be secure in his person, property, communications, houses, papers and effects . . . ." (Emphasis added.) Hence, the language of the provision granting a person standing to challenge a search "conducted in violation of this Section" clearly refers to searches of his person, property, etc., not searches affecting third persons' rights.
This interpretation of art. 1, § 5 is supported by the customary and usual meaning of the language in which it is written and is consonant with the federal conception of fourth amendment rights and the exclusionary rule fashioned to protect them in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1963). Also, it is in accordance with the United States Supreme Court decision in Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). Conversely, I feel that the interpretation of the majority reads into the provision substantive rights not plainly set forth therein. Moreover, it is not in conformity with recent expressions of the United States Supreme Court demonstrating a studied reluctance to expand the scope and application of the exclusionary rule in the absence of clear proof that such extensions would have a significant effect on deterring illegal police conduct. Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).
In any event, I consider the search conducted in the instant case was lawful for reasons assigned in the original opinion. Accordingly, I respectfully dissent from the majority opinion on rehearing.
NOTES
[1] As provided by that constitutional section, the present defendant, as a person adversely affected by such unconstitutional seizure, has standing to complain of its illegality. State v. Culotta, 343 So.2d 977 (La.1977).
[2] The decision states, for example: "The inference that persons who talk to narcotics addicts are engaged in criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon individual personal security."