389 So.2d 42 (1980)
STATE of Louisiana
v.
Verna BIBLE, Robert Steven Meziere and Billy W. Moore.
No. 66584.
Supreme Court of Louisiana.
September 3, 1980.
Rehearing Denied October 31, 1980.
*43 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Lowen B. Loftin, Dist. Atty., William R. Coenen, Jr., Asst. Dist. Atty., for plaintiff-appellee.
Carey J. Ellis, Ellis & Ellis, Rayville, for defendants-appellants.
LEMMON, Justice.
Defendants, Verna Bible, Billy Moore and Robert Meziere, have appealed their conviction of possession of marijuana with intent to distribute, the sole assignment of error being the trial court's refusal to grant their motion to suppress the evidence seized after a warrantless search.

I.
State Trooper Warner received information from a confidential informant on March 1, 1977 that Moore would be traveling from Texas in a blue and white Monte Carlo and would arrive at the J'Cal Trailer Park in Rayville during the early morning hours of March 2, 1977 to deliver marijuana to a person named Lingefelt. Trooper Warner knew the informant, who had previously made a controlled purchase of narcotics under Warner's supervision. Although the informant had never previously given Warner information which led to a narcotics arrest, he had given Warner drug-related information which Warner independently verified.
Later that evening Trooper Warner and two other officers went to the J'Cal Motel to establish a surveillance. From the motel room they observed Lingefelt in a trailer behind the motel. At about 12:15 a. m. (in the early morning hours of March 2, 1977) they saw a blue and white Monte Carlo arrive at Lingefelt's trailer. Trooper Payne recognized one of the passengers to be Billy Moore, having known him from Moore's prior involvement in illegal drug dealings. In fact Payne had previously purchased marijuana from Moore as an undercover agent during the closing months of 1976.
Defendant Meziere, the driver of the Monte Carlo, went to Lingefelt's trailer, and when Lingefelt came to the door, Moore opened the trunk of the Monte Carlo, took out a suitcase and a brown paper sack and took these articles into Lingefelt's trailer. *44 After a period of less than fifteen minutes, Moore left the trailer with the suitcase and replaced it in the trunk of the Monte Carlo. Moore and Meziere then entered the Monte Carlo and drove away in an easterly direction on Highway 80. Shortly thereafter Lingefelt left the trailer, carrying what appeared to be the same brown paper sack which Moore had previously brought into the trailer, and drove off in a truck, also heading east on Highway 80.
In the meantime Tooper Payne and the other officer, at Trooper Warner's instructions, had followed the Monte Carlo and set up a roadblock about three-fourths of a mile east of the motel. When the officers stopped the car, they ordered the occupants (Moore, Meziere and Miss Bible) to get out and advised them of their rights, but told them they were not under arrest.[1] Trooper Warner had instructed the officers not to search the vehicle, but merely to hold it and the defendants pending his arrival.
When Lingefelt left the motel, Trooper Warner followed him and stopped him before he reached the roadblock. Trooper Warner observed a brown paper sack on the front seat next to Lingefelt, which had the same appearance as the sack he had seen Moore bring to the trailer. Warner took possession of the sack and opened it, finding a cellophane bag that contained one pound of marijuana.
Armed with this additional information, Trooper Warner placed Lingefelt under arrest and proceeded immediately to the location where the defendants were being detained. Upon arrival at the Monte Carlo (which the evidence established was only a few minutes after the initial stop), Warner told the defendants that he intended to search the car. He obtained the keys, opened the trunk, and found and opened the suitcase, finding the marijuana which was the target of the defendants' motion to suppress.

II.
In determining whether probable cause may be found based on information from an unidentified informant, this court has followed the analysis outlined in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and State v. Paciera, 290 So.2d 681 (La.1974). The facts must establish the informant's credibility as well as the reliability of the information supplied. The decision in State v. Tassin, 343 So.2d 681 (La.1977), noted that (1) the factors which support the credibility of an unidentified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report and (2) the factors which support the reliability of the reported information include direct personal observation by the informant or, if the information came indirectly to the informant, detailed reasons with which to evaluate and credit the reliability of both the indirect source and of the indirectly obtained information.
As to the reliability of the information in this case, the tip did not represent the observation of an eyewitness, but it was sufficiently detailed to indicate that it was more than a "casual rumor circulating in the underworld". See Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); State v. Wilson, 366 So.2d 1328 (La. 1978). The tip, as corroborated by surveillance, accurately described the automobile, the place to which the vehicle would deliver the marijuana, the person to whom the marijuana would be delivered, the person who would deliver the marijuana (a person known to the officers to be a drug dealer), and the approximate time of day when the transaction was to occur.
As to the credibility of the informant, Trooper Warner testified that the informant had previously supplied him with accurate information which, although not leading to an arrest, had been independently verified. While the informant's participation in controlled buys does not alone *45 pertinently establish credibility, the combination of all factors is sufficient to support an inference of credibility. See State v. Tassin, above. Significantly, this case is not one in which the sole basis for believing the informant was his participation in a single controlled purchase.
Furthermore, the tip in this case was independently verified by surveillance prior to the search of the Monte Carlo. As the surveillance progressed, the officers watched the informant's tale unfold before their eyes just as it had been told. While it is conceded that the conduct observed was consistent with innocent behavior, the tip gave the conduct the color of criminal activity. The defendants' behavior, together with Moore's known previous involvement with illegal drugs, added credibility to the informant's tale.
By the time Meziere drove the Monte Carlo away from the J'Cal Motel, the officers were certainly justified in stopping it, and even if they did not yet have probable cause to search, they certainly had enough information to justify stopping the car and temporarily detaining its occupants. At that point the officers unquestionably had an articulable basis for their suspicions, thereby justifying the initial stop. See State v. Jernigan, 377 So.2d 1221 (La.1979); State v. Jefferson, 284 So.2d 882 (La.1973).[2]

III.
When the search complained of occurred, Trooper Warner had developed almost conclusive corroboration of the tip, namely, the marijuana found in Lingefelt's truck. After the discovery of Lingefelt's marijuana, probable cause clearly existed to search the Monte Carlo when Trooper Warner arrived on the scene. The question is whether the marijuana seized from Lingefelt can be considered in determining probable cause to search the car.
La.Const. Art. I, § 5 (1974) accords to an accused the right to object to the admissibility of illegally seized evidence, even though the search does not invade the accused's own legitimate expectation of privacy. State v. Hebert, 351 So.2d 434 (La. 1977). Compare Rakas v. Illinois, 435 U.S. 922, 98 S.Ct. 1483, 55 L.Ed.2d 515.[3] Nevertheless, in State v. Cullotta, 343 So.2d 977 (La.1977), this court recognized that the laudatory deterrent purpose served by the Louisiana exclusionary rule does not mandate that illegally seized evidence cannot be considered in support of probable cause. This observation is particularly pertinent in a case, such as this one, in which the illegally seized evidence merely corroborates information that was legally obtained. As in the Cullotta case, this case does not involve a situation in which the possibly illegal evidence was the sole basis for establishing probable cause. The evidence produced by the questionable seizure from Lingefelt's truck merely served to corroborate other information and to provide an additional basis for the determination that the other information came from a credible source. Therefore, although the validity of the seizure from the truck presents a close question, Lingefelt's marijuana may nevertheless be considered in support of Trooper Warner's probable cause to search the Monte Carlo.[4]
The use of the possibly illegal evidence for consideration in support of probable cause is particularly logical when *46 viewed in light of the purpose of the exclusionary rule. The rule should not preclude the use of evidence seized from a vehicle in which defendants had no reasonable expectation of privacy, when the evidence was used merely to corroborate other information to support a finding of probable cause. The "deterrent policies and individual protection" expressed by Louisiana's Constitution are not violated under such circumstances. See State v. Cullotta, above, at 983.
We therefore conclude that when Trooper Warner arrived at the place where the Monte Carlo had been detained, he clearly had probable cause to believe that defendants were involved in illegal activity involving marijuana and that the Monte Carlo had been used to transport marijuana. However, further inquiry is necessary because Trooper Warner thereafter conducted his search of the trunk of the automobile and of the suitcase without obtaining a warrant.[5]
In cases of searches of automobiles, the Supreme Court of the United States and this court have held that officers acting with probable cause may stop and search moving vehicles. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; State v. Tant, 278 So.2d 458 (La.1974). This position has been adopted, despite the usual preference for a judicial determination of probable cause prior to a search, in part because of the diminished expectation of privacy in an automobile and in part because of the inherent mobility of the automobile. When probable cause exists, the courts have not required officers merely to stop vehicles and detain them pending the issuance of a search warrant. Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975).
We therefore conclude that Trooper Warner's action in having defendants' vehicle stopped and in opening the trunk of the vehicle was lawful despite the absence of prior judicial approval.
The warrantless search of the suitcase presents a more difficult problem. In Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the court declared illegal the warrantless search of a suitcase taken from the trunk of a taxicab that had been legally stopped, despite the fact that the officers had probable cause to believe the suitcase contained marijuana. The court refused to extend the rationale of the Carroll and Chambers cases to luggage being carried in a vehicle.
In the Sanders case the officers had probable cause to believe that defendant would arrive at the Little Rock Airport with a green suitcase containing marijuana. They saw the defendant disembark from an aircraft carrying a green suitcase and leave in a taxi. They then stopped the taxi and seized and searched the suitcase. The court found that "a suitcase taken from an automobile stopped on the highway is not necessarily attended by any lesser expectation of privacy than is associated with luggage taken from other locations." Once the suitcase was immobilized and taken into police custody, the court found no justification or greater need for a warrantless search of luggage taken from an automobile than of luggage taken from any other location. See Chadwick v. United States, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).
In a concurring opinion in the Sanders case, Chief Justice Burger opined that the decision did not bar the warrantless search of luggage located in a vehicle under all circumstances. The opinion noted, for example, the case in which officers have probable cause to believe that the contraband is located somewhere within a stopped vehicle, but do not know whether it is located in a piece of luggage, or in the glove compartment, or elsewhere in the car.
In the present case, although the officers conducting the surveillance (based on a tip) had seen the suitcase taken into Lingefelt's *47 trailer and later replaced in the trunk, the tip did not directly mention or describe a suitcase, as did the tip in the Sanders case, but rather described a blue and white Monte Carlo. The only place in the vehicle that the officers in the Sanders case had probable cause to believe that marijuana might be found was in the defendant's green suitcase, and, indeed, the officers arguably did not have probable cause to seize the taxicab and take it to the station. Here, the officers had probable cause to search the entire vehicle, and although the suitcase was one likely place to look, the probable cause was not focused on a particular location within the vehicle, including the suitcase, and the taking of the suitcase to the station to obtain a warrant before the search (as suggested in the Sanders decision) would not have removed the exigency of mobility associated with the automobile.[6]
Thus, we distinguish the Sanders case, in which the officers had probable cause only to search the suitcase and in which exigent circumstances no longer existed after the suitcase was taken into custody, from this case, in which exigent circumstances continued to exist, whether or not the officers found marijuana in the suitcase. Furthermore, the officers in this case clearly had probable cause to search the entirety (including the luggage, the trunk, the glove compartment, and other areas) of the vehicle they had legally stopped, while the officers in the Sanders case arguably did not have probable cause to search a public taxicab apparently unrelated to defendant or to the tip from the confidential informer.
There is still another reason to find that the Sanders decision does not require suppression of the marijuana seized from the Monte Carlo. The search here took place in March of 1977, over two years before Sanders was decided.[7] Cases extending the exclusionary rule should not be given retroactive effect to bar admissibility of evidence which officers seized in good faith relying on existing standards. See United States v. Peltier, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1974). Several courts have refused to order exclusion of evidence when, as here, the search of an article or luggage occurred prior to the date of the Sanders and Chadwick decisions.[8] See Kimmer v. State, 598 S.W.2d 403 (Tex. Cr.App.1979); United States v. Calandrella, 605 F.2d 236 (6th Cir. 1979); United States v. Stewart, 595 F.2d 500 (9th Cir. 1979); and United States v. Montgomery, 538 F.2d 311 (5th Cir. 1977).
For the foregoing reasons, the convictions and sentences are affirmed.
AFFIRMED.
DIXON, C. J., concurs with reasons.
CALOGERO, J., concurs and assigns reasons.
*48 WATSON, J., concurs in the result.
DENNIS, J., dissents with reasons.
DIXON, Chief Justice (concurring).
I respectfully concur in the result, because there was probable cause to search both the truck and the automobile after the police saw the transfer of the material taken from the car. There was therefore no illegally seized evidence, and no possibly illegal detention of the automobile.
CALOGERO, Justice, concurring.
I concur because I agree that Sanders and Chadwick, supra, are not to be given retroactive application. I do, however, find them indistinguishable from the instant case.

On Application for Rehearing
PER CURIAM.
The application for rehearing correctly points out that we erroneously listed the date of the seizure as March 2, 1977, when the seizure in fact occurred on March 2, 1979. The seizure was therefore before the Sanders decision, but after the Chadwick decision.
Nevertheless, the non-retroactivity of the Chadwick and Chambers decisions was only an alternate ground for affirming the denial of the motion to suppress, and the validity of the other grounds still stands. Moreover, the fact that this search occurred after the Chadwick decision is not of great significance, since the rationale of the Chambers decision was unaffected by the Chadwick decision. See United States v. Ochs, 595 F.2d 1247 (2d Cir. 1979). Compare United States v. Dien, 609 F.2d 1038 (2d Cir. 1979), on rehearing, 615 F.2d 10 (2d Cir. 1980). Therefore, at the time of this search the Chambers rationale had not been limited or modified, and the search pursuant to that rationale was valid.
The application for rehearing is denied.
APPLICATION DENIED.
CALOGERO, J., dissents with reasons.
DENNIS, J., would grant a rehearing.
CALOGERO, Justice, dissenting.
Relying upon the majority's assertion that the search occurred on March 2, 1977, prior to United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), I concurred in the majority expression that Chadwick not be given retroactive application. In light of the correction in the date of the search and the effect of the Chadwick case, this case being indistinguishable from Chadwick, I am of the opinion that defendants' convictions should be reversed. In Chadwick, the United States Supreme Court stressed that luggage is intended as a repository of personal effects and that the contents are not open to public view. Consequently, a person's expectation of privacy regarding personal luggage is substantially greater than in an automobile. When no exigency is shown to exist, supporting the need for an immediate search, a warrant is required to validate the search of luggage. 433 U.S. at 13-15, 97 S.Ct. at 2484-2485.
For this reason, I would grant a rehearing.
NOTES
[1] The males were frisked by the officers. No evidence was produced by the frisk, and its validity is not an issue here.
[2] As the court held in the Jernigan case, above, even tips which are deficient under the standards of Aguilar v. Texas, above, and State v. Paciera, above, may justify an investigatory stop if the tip carries sufficient "indicia of reliability, such as specificity of the information and corroboration by independent police work". 377 So.2d at 1225.
[3] If the court were dealing solely with the Fourth Amendment standards, there would be no question concerning the appropriateness of use of the marijuana discovered in Lingefelt's truck in connection with the defendants' case either to support guilt or to establish probable cause. See Rawlings v. Kentucky, ___ U.S. ___, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
[4] The marijuana found in Lingefelt's truck was introduced at defendants' trial without objection. Thus, its admissibility to prove guilt is not before the court on this appeal.
[5] In cases of warrantless searches the state bears the burden of proving the validity of the search and hence the admissibility of evidence seized pursuant to the search. State v. Franklin, 353 So.2d 1315 (La.1977).
[6] The Sanders decision discussed and recognized that the societal cost of an inflexible requirement to obtain a warrant to search a legally stopped automobile outweighed the value of presenting probable cause to a neutral magistrate, stating:

". . . In Chambers, if the Court had required seizure and holding of the vehicle, it would have imposed a constitutional requirement upon police departments of all sizes around the country to have available the people and equipment necessary to transport impounded automobiles to some central location until warrants could be secured. Moreover, once seized automobiles were taken from the highway the police would be responsible for providing some appropriate location where they could be kept, with due regard to the safety of vehicles and their contents, until a magistrate rules on the application for a warrant. Such a constitutional requirement therefore would have imposed severe, even impossible, burdens on many police departments."
[7] Arkansas v. Sanders, above, was decided on June 20, 1979.
[8] Chadwick v. United States, above, was decided on June 21, 1977, almost four months after the date of this search. The Chadwick case involved a warrantless search of a footlocker taken into police custody. Although officers had probable cause to believe marijuana was contained in the footlocker, the court found no justification for their failure to obtain prior judicial approval before opening the locker to seize its contents. Whether the Chadwick decision may have forecast the decision in Sanders is of no consequence here because the search here occurred before both decisions.