351 So.2d 1162 (1977)
STATE of Louisiana
v.
Alfred JOSEPH and Gilbert Hill.
No. 59684.
Supreme Court of Louisiana.
November 14, 1977.
*1163 Barry F. Viosca, Orleans Indigent Defender Program, New Orleans, for Gilbert Hill.
Frederick T. Kolb, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, for Alfred Joseph.
*1164 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John L. A. Lenfant, IV, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Alfred Joseph and Gilbert Hill were jointly indicted for possession of heroin with intent to distribute, in violation of R.S. 40:966. After separate jury trials, defendant Joseph was convicted of attempted possession of heroin with intent to distribute, found to be a habitual offender, and sentenced to serve twenty-five years at hard labor; defendant Hill was convicted of possession of heroin and sentenced to serve ten years at hard labor. Joseph relies on five assignments of error and Hill relies on nine assignments of error for reversal of their convictions and sentences. Finding reversible error in the first assignments of error of both defendants, we pretermit consideration of the other assignments.
Defendants contend that the trial court erred in denying their motions to suppress evidence seized. The basis of their motions was that the affidavit used to procure the search warrant was inadequate to establish probable cause for a search.
Pursuant to the search warrant, the following evidence was seized: fifteen tin foils of brown heroin, one hypodermic syringe and hypodermic needles with holders, over $100 in currency, numerous pieces of paper with writing and numbers allegedly of the type used by heroin sellers to record sales, and various other paraphernalia related to the use of heroin.
The reasons and facts for the request of a search warrant set out in the affidavit of Detective Frank Ben, upon which the warrant's issuance was based, read as follows:
"1. On Thursday, October 24, 1975 at about 7:30AM Det. Frank T. Ben received information from Det. Albert Green at the Urban Sq. Office that heroin was being sold from 504 Forstall St.
2. At about 8:00AM on 10-24-75 Det. Ben, Green and Johnson went to the area of the 500 block of Forstall St. to conduct a mobile surviellance (sic) of the residence at 504 Forstall St. Det. Green at the time was in contact by telephone with a reliable confidential informant whose information had lead (sic) to arrest and convictions in the past. The C.I. stated that a telephone call would be placed to the officer as soon as he observed drug activity at 504 Forstall St. Meanwhile the officer continued their vehicle surviellance (sic) of the area. At about 9:45AM the officers were notified that the white car was in the 500 block of Forstall St.
The officers immediately went to the area of the 500 block of Forstall St. and observed a NM walking from 504 Forstall St. and re-enter the white Pont'. The car then left the area. The officers followed the vehicle and subsequently stopped the car at the intersection of Caffin and N. Rampart St. the vehicle lie # was 432B306. As the officers alighted from the vehicle the male in the passenger front seat put several pieces of tin foil into his mouth, and became engaged in a struggle with Det. Ben. The suspect was able to swallow the tin foil. The persons in the vehicle were I.D. as Lehman Jackson NM heroin addict, Russell Lewis NM, who at the time of the interview admitted to swallowing marijuana as the officers stopped the vehicle and Brad Turner NM admitted addict, who admitted that he had swallowed heroin when the officers stopped the car. The trio (3) were released.
3. On 10-25-75 at about 8:00AM Det. F. Ben conducted a surviellance (sic) of the residence at 504 Forstall St. and observed the following:
A) At about 8:55AM the officer observed a white Buick (64) park in the 500 block of Forstall St. with four (4) person in the car.
B) At about 9:00AM Det. Ben observed a tan Chevy Station Wagon park in front of 502 Forstall with a small child and a NM driver and a NF passenger. The male was wearing a yellow shirt and a grey hat and DkGrey checked pants. As he exited the vehicle he motioned for the persons in the white vehicle to come to *1165 him. At the same time he took a radio from the car which had a paper bag in the back of it, and walked toward 504 Forstall St. The female and child then left the area in the chevy wagon. The NM opened the door to 504 Forstall St. and the two (2) passengers alighted from the Buick and approached him, but were motioned to the rear of the residence by walking to Douglass St. A short time later the NM re-appeared at the front door of 504, and the two (2) NMs walked from the Douglass side of the residence and back to the car nervously all the while holding one hand in a fist. The Buick then left the area.
C) At about 9:15AM a marked police vehicle passed the intersection of Chartres and Forstall St.
D) At about 9:25AM a Grey and black 71 Cadillac stopped in the intersection of Douglass and Forstall St. with three (3) persons in the car. At the same time the marked police car passed on the levy (sic) in a uptown direction, and the NM came to the door of 504 Forstall and called for them (Cadillac) to park the car and not worry. The passenger alighted from the front seat of the Cadillac and walked to 504 Forstall Street and met with the male from the residence who had exited to the front steps. The two (2) conversed about the police car on the levy (sic), and the passenger told the male that he had also seen a yellow police car down the street, which seemed to unnerve the male, and the two (2) then entered the residence.
A short time later the passenger exited the residence and was pick-up by the Cadillac which blew its horn. The male then exited the residence with a bag which he placed under the back of his shirt, and then entered the Cadillac in the front seat. The car then left the area in the lake direction on Forstall St.
4. With the information received and the surviellance (sic) conducted and the fact that addicts (heroin) were stopped immediately after they left the residence and admitted to have had heroin in their possession it is the belief of the affiant that there is presently being concealed at 504 Forstall St. narcotics."
C.Cr.P. 162 provides in part:
"A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant."
In Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court set forth, in a "two-pronged" test, the criterion which a magistrate must follow in determining if an affidavit based upon hearsay has established probable cause for the issuance of a search warrant: (1) the affiant must articulate the basis for his belief that the informant is trustworthy, and (2) the affidavit must indicate the underlying circumstances from which the informant concluded that the narcotics were where he contended they would be. Later the court in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), made the criterion more flexible by allowing an informer's tip which is inadequate under Aguilar standards to be corroborated by independent sources.
This court, in State v. Paciera, 290 So.2d 681 (La.1974), enunciated the following rule, deduced from United States Supreme Court cases, to measure the sufficiency of a supporting affidavit which is based upon informant-supplied data:
". . . The affidavit submitted to the magistrate may be based entirely upon hearsay, but, if so, it must set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find reliable both the informant and the information given by him. Factors which support the credibility of an unidentified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the creditability of the information reported include (a) direct personal observation by the informant, or (b), if the information came indirectly to *1166 the informant, the reasons in sufficient factual detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectly-obtained information. See State v. Linkletter, 286 So.2d 321 (La.Sup.Ct.1973)." 290 So.2d at 685-86.
The facts set forth in the affidavit in the instant case, relative to the informant's tip, fail to satisfy the Paciera test. Although the language of the affidavit is unclear, we infer that Detective Albert Green, a non-affiant police officer, obtained information from a confidential informant that heroin was being sold from 504 Forstall Street, which information was relayed to the affiant, Detective Ben. This kind of "double hearsay" may still be sufficient to supply the necessary information to establish probable cause. Paciera, supra. The affidavit does articulate the belief that the informant is trustworthy by making reference to "a reliable confidential informant whose information had led to arrest and convictions in the past."
What is lacking from the affidavit are the underlying circumstances by which the informant obtained his information. The State argues that the affidavit indicates the confidential informant had person observation of drug activity at 504 Forstall. The State's reading of the affidavit is inaccurate. The affidavit states that the confidential informant would place a phone call to Detective Green "as soon as he observed" drug activity at the address, and then states that "the officers were notified that the white car was in the 500 block of Forstall St." This information does not indicate that the informant observed anything more than an automobile near the suspected residence; it does not establish that the informant had direct personal observation of the activity nor does it provide the factual detail necessary for a magistrate to evaluate the reliability of the information.
Although we have determined that the informant's tip in and of itself would not be sufficient to support a finding of probable cause for issuance of the search warrant, our inquiry does not end there. Spinelli, supra, allows the magistrate to evaluate the independent factual information supplied by the police officers to determine if it corroborates the informant's tip.
The police officers, in their surveillance of 504 Forstall Street, obtained the following information which Officer Ben included in the affidavit:
(1) On October 24, 1975, a black man was seen walking from the vicinity of 504 Forstall and entered a vehicle containing two other black men. The officers followed and stopped the vehicle. Two of the men were identified as heroin addicts, one of whom admitted to swallowing heroin when the officers stopped the car. The other man admitted to having swallowed marijuana upon being stopped.
(2) On October 25, 1975, a black man left a car parked on the block, carrying a radio which had a paper bag in the back of it, began to enter 504 Forstall, motioned to two other black men who had left another car, and then entered by the front door. The two men then returned from the rear of the residence "nervously all the while holding one hand in a fist."
(3) On October 25, 1975, a short time after the foregoing incident, a passenger alighted from a vehicle and met the man who had earlier entered the residence on the front steps of 504 Forstall. The two conversed about two marked police cars which had passed nearby "which seemed to unnerve" the man, and then entered the residence. Later the passenger returned to his vehicle, and the other man left with a bag he placed under the back of his shirt and joined the passenger in the vehicle.
We find that the stop of the vehicle in (1) above was illegal, having been made without probable cause. Therefore, we will not allow the information obtained from the stop to be considered in determining if the affidavit submitted presented a sufficient factual basis to establish probable cause for the search warrant.
In State v. Saia, 302 So.2d 869 (La.1974), we held that probable cause was needed to detain or "seize" an individual. When *1167 probable cause is not present, any information obtained as a result of the seizure is inadmissible into evidence. In the instant case the officers were notified of a certain car parked in the 500 block of Forstall, saw a black man walking from 504 Forstall (testimony at a hearing on the motion to suppress established that the officers did not actually see the man exiting the residence but merely saw him in the vicinity of the residence) and enter the vehicle, and then followed and stopped it. There was no mention of any suspicious behavior, and no direct connection with the suspected residence was made. Clearly, the officers lacked sufficient evidence to justify the stop. Even the criteria of C.Cr.P. 215.1 (that there must be a "reasonable suspicion" the suspects are committing, have committed, or are about to commit a crime) is absent.
The question of whether evidence secured by a judicially issued search warrant should be suppressed when a significant part of the showing of probable cause made in the affidavit contains evidence and statements illegally obtained from third persons, which would be inadmissible against the accused in a trial of his guilt or innocence, has previously been considered by this court. State v. Culotta, 343 So.2d 977 (La.1976). In Culotta it was determined that an arrest of some third persons was illegal. Certain evidence was obtained along with statements which were included in the affidavit submitted for issuance of the search warrant. Included in the affidavit was other information which in and of itself would have been sufficient to justify the issuance of a search warrant. The court held:
"We do not believe that the scope of the constitutional provision was necessarily intended to exclude from the trial evidence otherwise untainted, secured through a search warrant, because part of the showing made in the affidavit used to secure the warrant is based upon evidence illegally obtained from third persons and inadmissible, if objected to at trial, against either them or the accused. (If the sole basis of the affidavit was such illegally-secured evidence, our conclusion might well be different.)" 343 So.2d at 982. (Emphasis added).
The facts of Culotta are distinguishable from the instant situation. Although in our case the statements procured from the illegal stop did not form the "sole basis" of the affidavit, the other corroborating facts regarding the other two suspicious looking incidents in (2) and (3) above would be insufficient to bolster the inadequate informant's tip in order to justify a finding of probable cause for issuance of the warrant. In Culotta the affidavit, absent the illegally obtained evidence and statements, could have supported a finding of probable cause.
We find it necessary, therefore, to disregard the affidavit's reference to the stop and admissions made by the vehicle's occupants. We are left with the following: (1) a tip from a confidential informant known to be reliable in the past, (2) no facts to show how the informant obtained his information, (3) police observation of four different people entering 504 Forstall, two of whom left from the rear holding one hand in a fist, another who left apparently holding nothing, and another man leaving with a paper bag he inserted under the back of his shirt. In addition, the officers heard two of the men expressing their apparent concern about the presence of police vehicles in the area.
The facts discovered through the police surveillance are insufficient corroboration for the informant's tip to provide the basis for a finding of probable cause. There was not present a "continuous stream of highly unusual conduct" as existed in State v. Williams, 338 So.2d 1365, 1369 (La. 1976), which this court found "indicated criminal rather than innocent seeming conduct" and thus was held sufficient to support the issuance of a search warrant. In Williams, within a twenty minute period, eight different cars parked in front of defendant's apartment; the occupants entered and stayed only three to five minutes before departing. In addition, many of those frequenting the apartment were known drug addicts or known to have been *1168 involved in drug traffic. In the present case no contention is made that any of the four persons who entered the residence were known to be connected with drugs in any way, nor are clenched fists and a paper bag enough to raise the probability that drug trafficking was involved. Even a "common sense and realistic" reading of the affidavit (as is allowed by the rule of reason adopted in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)) would not cause the "suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed." Spinelli, supra, 393 U.S. at 418, 89 S.Ct. at 590.
Accordingly, we conclude that the affidavit failed to make a sufficient showing of probable cause; the search warrant was improperly issued. Hence, reversible error was committed by the trial court's refusal to suppress the evidence seized.
For the reasons assigned, the convictions and sentences are reversed and the case is remanded for a new trial.
TATE, J., concurred in the result and filed opinion.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent.
TATE, Justice, concurring.
I concur with the majority holding that the affidavit for the search warrant did not meet constitutional standards. However, I do so for a different reason.
I do not believe that the affidavit shows probable cause for search of this residence, even if the issuing magistrate permissibly could consider evidence gained from the illegal stop. (That is, if the illegal stop of these third persons indirectly produced indicia of probable cause to search the home, I am not prepared to say that State v. Culotta, 343 So.2d 977 (La.1976) is authority to suppress this evidence. It was seized as the result of a search warrant, issued and executed as the result of an affidavit showing probable cause, in which merely part of the showing (even though crucial to tip suspicion into probable cause) was indirectly obtained as the result of an illegal stop.)[1]
The affidavit shows, essentially:
An unidentified informant, of sufficient past reliability, informed the police that heroin was being sold from 504 Forstall St. (The factual basis for this faceless informer's tip is not shown; under the jurisprudence it must be supplied elsewhere in the affidavit.)
As a result, the police officers conducted surveillance of these premises. The confidential informant also stated that he would telephone the officer as soon as he observed drug activity at the premises.
The informant telephoned the officer that "the" white car was in the 500 block the officers then saw an individual leaving 504 Forstall Street and "re-enter" the vehicle. The police illegally (since without probable cause) stopped the vehicle, in which were: a heroin addict; another individual who admitted to swallowing marijuana; and a third individual who admitted he had swallowed heroin. No information shown by the affidavit indicates that these individuals had secured a drug from 504 Forstall Street.
Other incidents of the surveillance are recounted, none of which amount to more than suspicious activity. As the majority states, neither singularly nor in cumulation do these incidents amount to probable cause.
The chief probable cause relied upon is "the fact that addicts (heroin) were stopped immediately after they left the residence and admitted to have had heroin in their possession."
*1169 The fact that a heroin addict visits a house does not constitute probable cause to search that home for heroin, unless in addition some reliable information indicates that the addict secured from that residence any heroin found in his possession. See State v. Kuhlman, 293 So.2d 159 (La.1974). For that reason, the affidavit does not show probable cause to search the home of the accuseds.
I should also note my present opinion that defendant Hill shows reversible error by Assignment of Error Nos. 6 and 7. There, in aid of its attempt to prove intent to distribute heroin, the state introduced papers with notations made by the co-defendant Joseph, who was tried separately. In my opinion, this evidence was hearsay as to Hill, since the writings were introduced to prove the truth of their content.
This hearsay evidence was prejudicial to Hill. I do not believe it to be admissible under any recognized exception to the hearsay rule. Further, Hill was denied his confrontation rights to cross-examine the author (Joseph) of the writing concerning these incriminating notations.
For these reasons, I respectfully concur in the reversal of the convictions.
NOTES
[1] Culotta held that the illegally obtained evidence itself is inadmissible in any criminal prosecution, either against the third persons or against the defendant. It noted, however, that the illegality may be considered too attenuated to affect adversely a defendant not himself illegally searched, La.Const. Art. 1, Sec. 5 (1974). Therefore, no constitutional need exists to suppress other evidence seized by virtue of a search warrant based upon an affidavit showing probable cause founded partially upon information obtained by an illegal stop.