CHEHARDY, Judge.
On October 26,1981, pursuant to a search warrant based upon an affidavit of agent Timothy Valenti, the police authorities of Jefferson Parish seized 11,000 Quaalude tablets at the apartment of Royal Zamora. Zamora was charged with violation of R.S. 40:967, possession with intent to distribute a controlled dangerous substance. He pleaded guilty, reserving his right to appeal the court’s adverse ruling on his motion to suppress and motion to disclose the identity of the confidential informer, under the provisions of State v. Crosby, 338 So.2d 584 (La. 1976), and was sentenced to 10 years at hard labor.
Defendant alleges two errors of law: (1) failure to suppress evidence seized as the result of an unconstitutional search; and (2) failure to disclose the name of the confidential informant.

ERROR No. 1

The essential question presented by the motion to suppress was whether the police had probable cause to obtain the search warrant, or alternatively, whether the warrant was defective because of intentional misrepresentations by the affiant intended to deceive the magistrate.
Under the provisions of our law a person shall be free from unreasonable search and seizure of his house, person and effects in that no such search or seizure shall be made except on a warrant issued based upon probable cause supported by an affidavit of a credible person reciting the facts establishing the cause for the issuance of the warrant. La. Const. Art. 1, Sec. 5 (1974); C.Cr.P. art. 162.
The affidavit to procure the search warrant recites the following facts:
“On 24 Oct. 81 Agent Valenti reports speaking to a confidential informer, who has in the past given Agent information which through Agent’s investigation had proven to be reliable. Throughout the remainder of this application the confidential informer will be referred to as Cl. “The Cl related to Agent Valenti that they knew of a Spanish male known to them as ‘Royal’ who is currently residing in the Sun Lake apartments in the Ken-ner area of Jefferson Parish. The Cl further stated they knew of Royal through previous narcotics transactions and dealings. The Cl further stated the subject Royal was dealing white tablets with ‘LEMMON 714’ written on the tablets, which they recognized to be Quaa- *276 ludes through their experience and use of the drug in the past. The Cl also stated to Agent that Royal is currently driving a silver two door Continental, which he usually parks on the west side of his apartment. Upon further conversation with the Cl they stated to Agent Valenti that Royal lived at 812 Sunset Blvd. Apt. 5. At this point the conversation between Valenti and the Cl was then terminated.
“At this point Agent Valenti began an active investigation into the information received on ‘Royal’. Through Agent’s investigation it was learned that a subject Royal Zamora W/M 09/04/49 does in fact live at 812 Sunset Blvd. Apt. # 5, Ken-ner, La. Agent Valenti also learned that Royal Zamora has a previous narcotics arrest and is assigned JPSO B of I # 27391. Agent Valenti proceeded to 812 Sunset Blvd., Kenner, La. Upon Agent’s arrival at 812 Sunset Blvd., Agent Valenti observed a silver Continental bearing La. license plate # 682B253, parked on the west side of 812 Sunset Blvd., Kenner, La. A registration check on 682B253 shows the vehicle to be registered to a Royal Zamora and the plate should be displayed on a 1976 Continental. Agent Valenti was unable to maintain a constant surveillance on the apartment in question because of the way the building is constructed. At this point Agent Valenti returned to the narcotics office.
“At the narcotics office Agent Valenti was again contacted by the Cl, at which point they stated they could get a sample of the Quaaludes if Agent wanted. Agent Valenti made arrangements to meet the Cl in the Kenner area during the evening hours on 24 Oct. 81 at which point the Cl would get a sample of the drugs. Later in the evening hours of 24 Oct. 81, Agent Valenti met the Cl at a prearranged location. At the location Agent searched the Cl and found no signs of contraband, at which point Agent Valenti gave the Cl some confidential JPSO funds and instructed the Cl to proceed to Royal’s apartment to purchase a sample of the Quaaludes. At that point Agent Valenti maintained a constant surveillance on the Cl and followed them to 812 Sunset Blvd., Apt. # 5, Kenner, La. At that point the Cl entered Apt. # 5, while Agent Valenti was standing in the hall of the complex. A short time later the Cl exited the apartment in question and proceeded to a prearranged location to meet with Agent Valenti. At the prearranged location Valenti met the Cl at which point they handed over to Valenti the sample of the Quaaludes they had just purchased. Agent Valenti again searched the Cl for contraband. Finding no contraband the Cl stated that the subject Royal was holding a clear plastic bag containing white pills from which he randomly selected the sample of the Quaa-ludes and gave to the CI. The Cl also stated that the bag contained approx. 100 tablets. At this point Agent Valenti departed and returned to the narcotics office. Valenti identified the pills through the PDR to be Quaaludes.”
Both the State and the defendant agree that the criteria which a judicial officer must follow in determining whether an affidavit has established probable cause is set forth by the United States Supreme Court in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
First, the affiant must articulate the basis for his belief in the veracity and trustworthiness of the informant, and the reliability of his information, and further the affidavit must indicate the underlying circumstances from which the informant concluded the seizable items (here narcotics) were where he contended they would be. See State v. Richards, 357 So.2d 1128 (La. 1978); State v. Smith, 350 So.2d 1178 (La. 1977); State v. Joseph, 351 So.2d 1162 (1977). Thus the reliability of both the informant and his information must be demonstrated in the affidavit.
Later the court in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), relaxed the criteria by allowing an informant’s tip, inadequate un *277 der the Aguilar standards, to be corroborated by independent sources.
Louisiana adopted this interpretation in State v. Paciera, 290 So.2d 681, 685-686 (La.1974), wherein it is stated:
“ * * * The affidavit submitted to the magistrate may be based entirely upon hearsay, but, if so, it must set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find reliable both the informant and the information given by him. Factors which support the credibility of an unidentified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the creditability of the information reported include (a) direct personal observation by the informant, or (b), if the information came indirectly to the informant, the reasons in sufficient factual detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectly-obtained information.”
Appellant claims the credibility of the informant is at issue because the affidavit alleges the informant had given reliable information in the past, but at the hearing on the motion to suppress it was established that Agent Valenti had known the informant for only two weeks prior to the issuance of the warrant, and although the informant had given information on “other traffic”, it had riot led to any other arrests or convictions before or after the issuance of the warrant. This, appellant claims, is not sufficient to establish the reliability of the informant.
If, as appellant contends, the informant had no credentials to support a finding of credibility, it becomes necessary to determine whether there existed any specific independent corroboration of the accuracy of the instant report which Paciera suggests could alternatively support that credibility.
The report which would require corroboration would be the informant’s tip that Royal was dealing in Quaaludes. This was established by the agent’s own investigation, and by the controlled purchase.
An almost identical situation was presented in State v. Klar, 400 So.2d 610 (La.1981), wherein the Supreme Court combined both hearsay information relayed by the informant and the independent observations of the affiant to establish the reliability of the confidential informant and his information.
The inaccuracies and misrepresentations claimed are that while the confidential informant is at times referred to in the singular in the affidavit, the plural pronoun “they” in reference of the informant is used therein 11 times. It is suggested that this intentionally misleads the magistrate to believe the information comes from multiple sources and has the cumulative effect of strengthening the reliability of the affiant’s statement.
Appellant claims the misleading references were intentional and therefore the search warrant should have been found defective and quashed in its entirety. State v. Caldwell, 384 So.2d 431 (La.1980); State v. Ogden, 391 So.2d 434 (La.1980).
Testimony at the hearing on the motion to suppress reveals no intent to deceive the magistrate by the use of the term “they”, rather than the singular pronoun. It appears the use of the generic “they” was an attempt to protect the informer’s sexual identity, which would not have been protected to that extent if the informant had used the term “he” or “she”.
Alternatively appellant contends we are required to excise the inaccurate statements and examine the residue to determine if it supports a finding of probable cause. State v. Caldwell, supra; State v. Rey, 351 So.2d 489 (La.1977).
As we understand appellant’s position, he claims that because “they” is an inaccuracy if there is only one Cl, we are required to delete all statements “they” said. This, appellant claims, will negate the affidavit because the balance of the affidavit contains insufficient information upon which to issue a warrant.
*278 It does not appear to us that the inaccuracy of the statements is contested. The question is whether or not those statements were made by one person or more than one person; and if they were made by only one reliable person would the magistrate have been likely to find probable cause to issue the warrant?
Consequently we are of the opinion we need delete only the word “they” and examine the balance of the affidavit as though “they” did not exist.
We believe this is the manner in which the Rey court applied the law. In that case throughout the entire affidavit the suspect was identified as Edward Kenner, also known as Buggie Red. He was pointed out to the officer by different confidential informants as a dealer in heroin; his residence was identified and he was placed under surveillance. The affidavit discussed at length Kenner’s activities in the sale of narcotics and also included Kenner’s arrest record.
On the basis of the affidavit a search warrant was issued and contraband was found in the house identified. It was not until the officer went to make the arrest that it was discovered that the suspect was not Edward Kenner; his name was Albert Rey, and it was Rey’s residence not Ken-ner’s where the contraband was discovered.
The arrest record, however, was actually that of Edward Kenner.[1]
In Rey, the inquiry centered first on whether the statements were intentionally made to mislead the magistrate. It was determined the error in identifying the suspect as Edward Kenner was unintentional, since the informants, while incorrectly naming the suspect as Kenner, had actually pointed out Rey to the officer, and Rey’s residence and Rey’s car, and it was actually Rey who was under surveillance and whose activities were detailed in the affidavit.
The court found there was error in name only and not in the identification of the suspect. Therefore the court removed references to the name Edward Kenner, leaving intact the allegations in the affidavit, which of course concerned Rey. (The court deleted in its entirety the arrest record of Kenner because it was an inaccurate although not an intentional misrepresentation; it was actually the arrest record of Kenner and not Rey.) The Rey court then examined the balance of the affidavit and concluded that probable cause existed for the issuance of the warrant.
In the instant ease, after deleting the word “they” wherever it occurs, we have read the balance of the affidavit and conclude that the information, even if given by only one reliable informant, is sufficient to support probable cause for the issuance of the warrant.
It is clearly stated in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965):
“ * * * [Affidavits for search warrants, * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
******
“ * * * [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. * * * ”
We find no merit in defendant’s Error No. 1.

ERROR No. 2

The second assignment of error presents two issues: (1) should the motion to disclose the identity of the confidential informant have been heard concurrently with the motion to suppress; and (2) should the identity *279 of the informant have been disclosed to defendant.
Although the two motions were filed simultaneously, the trial court heard the motion to suppress first and denied it, and the motion to disclose was set for hearing at a later date. When the latter motion came for trial, the court disallowed testimony concerning the informant’s trustworthiness or credibility.
Our Supreme Court, in the case of State v. Tallie, 337 So.2d 504, 507 (La.1976), said:
“The inquiry at a motion to suppress is directed at the sufficiency of the affidavit presented to the magistrate. The credibility of the affiants who themselves presented the information to the magistrate may be attacked, since a falsely sworn affidavit is a fraud on the court. However, the personal credibility of the informants who gave the information to the affiant cannot be investigated at such a motion, since this is not an issue (except insofar as the indicia of their reliability as a source of information) at the hearing to determine whether the magistrate issued the warrant upon probable cause shown to him.”
In the instant case the affidavit sets forth sufficient information for the magistrate to evaluate the basis for the affiant’s belief that the confidential informer was in fact truthful. Thus the actual reliability and/or credibility of the informant is not a proper subject for inquiry at a motion to suppress. Accordingly the defense was not prejudiced by the trial court’s failure to try both motions concurrently.
The more serious issue raised by defendant is that he is entitled to disclosure because he was set up by a civilian recruited by the police to trap him. We find no evidence in the record which would support the claim that the police sought out the informant to participate in a crime. It was the informant who contacted the police with narcotic information. Additionally defendant is not charged with selling Quaa-ludes to the informer on October 24, 1982. He is charged with possession with intent to distribute on October 26, 1982.
In State v. Dotson, 256 So.2d 594, 606 (La.1971) (citations omitted), the Louisiana Supreme Court said:
“The informer privilege is the privilege of withholding the identity of an informant who supplies information to law enforcement officials concerning crime. The privilege is founded upon public policy and seeks to advance the public interest in effective law enforcement. * * *
“Because of its social importance, courts zealously guard the privilege. They order disclosure of the name of a confidential informant only under exceptional circumstances for the prevention of an injustice. The burden is upon the defendant to show exceptional circumstances justifying disclosure. * * * On the question of whether the circumstances warrant disclosure, much discretion is vested in the trial court. * * * ”
While evidence that the informer set up or participated in defendant’s crime will justify a disclosure of his identity, merely supplying information used by the police to obtain a search warrant is not in itself an exceptional circumstance justifying disclosure. State v. MacDonald, 390 So.2d 1276 (La.1980).
It is only when the informer is the sole witness to the crime with which the accused is charged that his identity must be revealed. When the informer is nothing more than an informer and does not participate in the criminal transaction which forms the basis of the prosecution, no disclosure of his identity is required. See United States v. Clark, 482 F.2d 103 (5th Cir.1973), and cases cited therein; Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); State v. Williams, 347 So.2d 184 (La.1977).
In the instant case the informer was not present in Zamora’s apartment on October 26, 1981. when Agent Valenti executed the search warrant and seized the Quaa-ludes which form the basis of the instant charge. Thus the trial judge acted properly in refusing to order disclosure of the informer’s identity.
*280 Accordingly, the court must hold assignment of Error No. 2 is without merit.
For the reasons assigned the conviction and sentence of Royal Zamora are affirmed.
AFFIRMED.

. There was an Edward Kenner, who also had a wife named Gail, who lived in the same neighborhood as Rey and his nickname was also “Boogie Red” or “Boogie Rey.”