LANIER, Judge.
Scineaux Paul Jarmon was charged by a bill of information with possession of twenty-eight grams or more, but less than two hundred grams, of cocaine, in violation of La.R.S. 40:967(C) and (F). He pled not guilty and filed a motion to suppress the evidence. The trial court denied the motion. Defendant withdrew his plea of not guilty, pled guilty as charged and reserved his right to appellate review of the trial court’s denial of his motion to suppress. State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced defendant to imprisonment at hard labor for a term of five years, without benefit of probation, parole or suspension of sentence and imposed a fine of one thousand dollars.[1] This appeal followed.
*95 FACTS
At about 8:00 a.m. on January 22, 1987, Sergeant Bryan White of the Narcotics Division of the East Baton Rouge Parish Sheriffs Office (EBRSO) received a telephone call from a confidential informant (Cl). The Cl had previously given information about narcotics trafficking to Sergeant White on approximately three occasions, and that information had led to the seizure of narcotics and/or the arrest of individuals. The Cl had never given Sergeant White any information that proved unreliable or inaccurate. The Cl told Sergeant White that Scineaux Jarmon would be leaving an apartment located on Governor Drive in a gray jeep bearing a California license plate and that Jarmon would be going to several places in the area of South Baton Rouge for the purpose of “dropping off” cocaine. Sergeant White testified that he was “personally familiar” with Jarmon, having arrested him on a prior occasion. Sergeant White testified that the Cl provided the exact address on Governor Drive from which Jarmon would be leaving. Testimony was given by Sergeant White about the basis of the Cl’s knowledge of the information in the tip, as follows:
Q. Sergeant White, what — how did the —did the informant relate to you how the informant knew that Mr. Jarmon was going to be doing this?
A. Yes, sir. The informant had been in the company of Mr. Jarmon and the informant was very familiar with Mr. Jarmon — had provided myself with information that we had been following up on a couple of days prior to his arrest and he had just told us some things that we had followed Mr. Jarmon and kept him under surveillance and checked out.
After Sergeant White received the Cl’s tip, he contacted Sergeant Carey Jenkins and Deputy Pat Bryne of the EBRSO. These officers, at about 8:30 or 9:00 a.m., established a surveillance of the apartment referred to in the Cl’s tip. At about 10:15 a.m., the officers observed defendant get into a jeep and leave. The jeep traveled to and stopped at a residence in the Hermitage Subdivision, and, thereafter, the jeep proceeded to some apartments on Oklahoma Street. Defendant apparently exited the jeep and went inside the dwellings at both locations. Defendant remained at the first location about five minutes, and he stayed at the second address for approximately three to four minutes. When defendant departed from the Oklahoma Street location, the surveillance was maintained. Sergeant Jenkins then advised Sergeant White that it appeared the jeep was accelerating and that defendant might have noticed their presence. At that point, Sergeant White requested that the jeep be stopped.
The jeep was followed to East Harrison and Nebraska Streets where it was stopped by Sergeant Jenkins and Deputy Bryne, using the emergency lights and sirens of their police units. Sergeant Jenkins positioned his unit behind the jeep, and Deputy Bryne drove his unit in front of defendant’s vehicle. Shortly after defendant’s vehicle had been stopped, Sergeant White arrived at the location. Although Sergeant White did not remember exactly how he had positioned his police unit at the scene of the stop, he stated that either his unit or that of Sergeant Jenkins was located to the rear of the jeep and “kind of pulled out” in the road.
Sergeant White testified that he had not drawn his weapon when he exited his unit, but he did not recall if the other officers had drawn their weapons. Sergeant White did recall Sergeant Jenkins holding up his badge and telling defendant to get out of the jeep; and, at that point, defendant was not free to leave. Similarly, Sergeant Jenkins testified that, from the time defendant first stepped out of his vehicle after being stopped, he was not free to leave. Sergeant Jenkins was neither questioned nor did he testify as to whether or not he, *96 Sergeant White or Deputy Bryne had drawn their weapons. However, defendant testified that “they pulled guns out.”
While defendant was exiting his vehicle in compliance with Sergeant Jenkins’ order, Sergeant Jenkins observed a plastic bag inside the right, “wide open” pocket of defendant’s jacket. The bag contained a white powder substance that Jenkins suspected to be cocaine based upon his experience as a narcotics officer. The officers patted down defendant, placed him under arrest and advised him of his Miranda rights. According to the testimony of Sergeants White and Jenkins, Sergeant Jenkins removed the plastic bag of suspected cocaine from defendant’s right jacket pocket either immediately before, contemporaneously with or immediately after defendant was placed under arrest. Thereafter, Sergeant Jenkins seized a small bag from the other jacket pocket, which was later determined to be cocaine. At that point, Sergeant White assumed custody of defendant, and Sergeant White recovered from defendant’s pants pockets about three thousand dollars and another bag containing what was subsequently tested and determined to be marijuana.
Sergeants White and Jenkins gave testimony which reveals , that neither of them observed any criminal activity of defendant during the period from the time defendant left the apartment on Governor Drive until defendant’s vehicle was stopped by them. However, Sergeant Jenkins testified that defendant’s activity comported with that of someone who would be making cocaine deliveries. Sergeant White stated that his observations of defendant during the surveillance confirmed the information furnished by the Cl.
VALIDITY OF SEARCH AND SEIZURE
Defendant asserts the trial court erred in denying his motion to suppress. He argues that, when the police stopped the automobile he was driving with drawn weapons and ordered him out of the vehicle, an arrest had occurred and that there was no probable cause for the arrest. Defendant contends that the information allegedly obtained from a confidential informant, which was relied upon by the police to make the stop, was not verified. He further argues that there was no evidence of the informant’s basis of knowledge that defendant was selling drugs. Finally, he argues that the facts gleaned through police surveillance were insufficient corroboration of the informant’s tip to provide the basis for a finding of probable cause to arrest him.
The state bears the burden of proving the admissibility of evidence seized during a search without a warrant. La.C. Cr.P. art. 703(D). A search conducted without a warrant is per se unreasonable under the fourth amendment, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of these exceptions is a search incident to a lawful arrest made of a person and the area in his immediate control. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). But, to justify a search as an incident to an arrest, the arrest must have occurred and the arrest must have been lawful. State v. Raheem, 464 So.2d 293 (La.1985).
A peace officer may lawfully arrest a person without a warrant when he has reasonable (probable) cause to believe that the person to be arrested has committed an offense. La.C.Cr.P. art. 213. Probable cause to arrest exists when facts and circumstances within the arresting officer’s knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Although mere suspicion cannot justify an arrest, the officer does not need sufficient proof to convict. State v. Bell, 395 So.2d 805 (La.1981). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. *97 Whether probable cause existed at the time of the arrest must be determined without regard to the result of the subsequent search. State v. Buckley, 426 So.2d 103 (La.1988).
In the instant case, the information on which police relied to establish probable cause came from a confidential informant. The test for ascertaining the credibility of a confidential informant who provides information which supports probable cause for a warrantless arrest is the same as the test used to determine the credibility of information received from a confidential informant which is contained in a search warrant. State v. Edwards, 406 So.2d 1331 (La.1981). Prior to Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), courts mechanically followed the “two-pronged” test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), to determine whether or not information from a confidential informant established probable cause. Under this test, it was necessary to show facts relating to the informant’s “basis of knowledge” and his “veracity” or “reliability.” However, in Gates, the United States Supreme Court abandoned an inflexible application of this test in favor of a “totality of the circumstances analysis.” The Court held that, while “basis of knowledge” and “reliability” are relevant considerations, these factors are not absolutely controlling and “a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.” 103 S.Ct. at 2329.
Defendant argues that the issues in the instant case are controlled by State v. Raheem, 464 So.2d 293 (La.1985), State v. Ruffin, 448 So.2d 1274 (La.1984) and State v. Joseph, 351 So.2d 1162 (La.1977).
Initially, we note that the Joseph case was a pre-Gates decision. Hence, defendant’s reliance on Joseph is misplaced. Additionally, we find the instant case to be clearly distinguishable from Raheem and Ruffin, two cases involving warrantless arrests based on information received from confidential informants who failed to disclose the basis of their knowledge. In both of these cases, the court found there was no probable cause justifying the warrant-less arrests. In Raheem and Ruffin, there was insufficient corroboration of the informant’s tip to establish probable cause. In the present case, however, the independent corroboration of the informant’s tip by the police was sufficient to establish probable cause that defendant was in possession of illegal drugs. The instant case is more factually similar to Illinois v. Gates and State v. Shepherd, 470 So.2d 608 (La.App. 1st Cir.1985).
In Gates, the police received an anonymous letter stating that the defendants were involved in drug trafficking. The letter predicted in specific detail certain future conduct, innocent in itself, which would be undertaken by defendants. These predictions were corroborated by police surveillance. A search warrant was thereupon issued on the basis of the anonymous letter and the corroboration of the details it contained. The Supreme Court held that these facts were sufficient to establish probable cause under the totality of the circumstances.
In Shepherd, a confidential informant gave police a tip that defendant would be in possession of illegal drugs at a specified time. The informant, who had given reliable information in the past, did not state the basis of his knowledge of this fact. However, he did predict certain future acts by the defendant, the occurrence of which were corroborated by the police. Although these acts were not illegal in themselves, this court held that the corroboration of these “innocent” acts provided probable cause to believe the informant’s allegation of drug possession.
In the instant case, Sergeant White’s testimony indicated the Cl had been in defendant’s company, but it did not conclusively establish that the Cl’s knowledge was personally obtained by the Cl from the defendant. The Cl’s veracity was well-established. On approximately three prior occasions, he had furnished informa *98 tion to Sergeant White concerning narcotics trafficking. The Cl had never given Sergeant White unreliable or inaccurate information, and the information previously provided had led to the seizure of narcotics and/or the arrest of individuals. In the instant case, the informant predicted defendant would leave a particular apartment located on Governor Drive in a jeep and go to other locations in South Baton Rouge for the purpose of “dropping off” cocaine. All of these predicted actions occurred and were viewed by the police. Only the ultimate fact of possession and delivery of drugs was not verified. The accurate predictions of defendant’s future actions indicated a good probability that the informant's information was reliable and was obtained either from defendant or someone close to him. Although the defendant’s predicted conduct was not illegal in itself, the corroboration of these details added to the informant’s veracity and reliability, creating a reasonable basis to believe the informant's unverified allegation of drug possession was also true. Under the totality of the circumstances, we find that there was probable cause for defendant’s arrest.
An arrest is defined in La.C.Cr.P. art. 201 as follows:
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Commodore, 418 So.2d 1330 (La.1982); State v. Shepherd, 470 So.2d 608 (La.App. 1st Cir.1985). In the instant case, in the absence of any evidence refuting defendant’s testimony that the officers had drawn their weapons during the stop of his jeep, we conclude that defendant was under arrest from the moment he exited the jeep in compliance with the police order and was patted down by the police.
Information obtained as a result of observation of an object in plain sight may be the basis for probable cause or reasonable suspicion of illegal activity. It is these levels of suspicion which may justify police conduct affording them access to a particular item. Texas v. Brown, 460 U.S. 730, 738 n. 4, 103 S.Ct. 1535, 1541 n. 4, 75 L.Ed.2d 502, 511 n. 4, (1983).
Although probable cause to arrest defendant existed before Sergeant Jenkins observed the plastic bag of suspected cocaine in plain view (while defendant was exiting the jeep), that observation augmented the already existing probable cause for defendant’s arrest. The observation provided a constitutionally permissible basis for the immediate warrantless seizure of the bag of suspected cocaine observed in plain view in defendant’s right jacket pocket. State v. Bracken, 506 So.2d 807 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987). Additionally, the search of defendant’s person conducted incidental to his arrest (which resulted in the seizure of other evidentiary items) was also valid. Hence, the trial court correctly denied defendant’s motion to suppress.
This assignment of error is without merit/
DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.

. La.R.S. 40:967(F)(1) provides for a mandatory fíne of not less than $50,000 and not more than *95 $150,000. Although defendant’s $1,000 fine is too lenient, in accordance with State v. Jackson, 452 So.2d 682 (La.1984) and State v. Fraser, 484 So.2d 122 (La.1986), it appears this court cannot correct the error because it is favorable to defendant, and the prosecutor has not complained that the sentence is illegally lenient.