VICTORY, Judge.
Defendant, William L. Banks, was convicted by jury of aggravated rape (LSA-R.S. 14:42), and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. He appeals his conviction contending that peremptory challenges were improperly used by the state and that his motion to suppress was improperly denied. We affirm.
FACTS
In the early morning hours of October 28, 1989, Cheryl Harrison fell asleep in her bedroom with a light shining in a nearby room. Her husband was working the late-night shift, and her two children were asleep in their bedroom at the other encLof the mobile home.
Harrison awoke to find a man standing beside her bed. He lunged for her and a struggle began. Harrison screamed as he brutally beat her. Her children remained silent despite her screams and she feared they were hurt. The assailant choked her to stop her screaming, and Harrison asked him not to hurt her children. The man responded that he would not, if she would behave.
The man partially ripped the panties off Harrison and told her to open her legs. Informing her that he was going to give her what all white women wanted, he proceeded to rape her violently.
After raping her, he pulled her panties off, and wandered around inside the house for several minutes before leaving. Once Harrison made sure the assailant was outside, she locked the door and awoke her children. She telephoned . her husband, who arrived soon afterwards and took her to the hospital.
Police were notified that night and went to the hospital. Because of the lighting in her bedroom, Harrison was able to adequately describe the defendant. The police believed that based on the assailant’s unusual height and other factors that he could have been Banks, a man who had recently been released from jail. Present *838 ed with a photographic lineup, Harrison identified Banks as the perpetrator.
Investigating the scene, police found a small piece of panties and a necklace in the bed where Harrison had been raped. Later that day, without a warrant, they arrested Banks after a lengthy chase on foot. A pat-down search of Banks produced a torn piece of panties from his rear pants pocket, which matched the unusual print pattern of the victim’s panties found in the victim’s bed.
PEREMPTORY CHALLENGES
Banks contends the trial court erred in allowing the state to exercise peremptory challenges on three jurors after they had been temporarily accepted by the state.
Banks made no contemporaneous objection to the challenges and when the jury selection process had been completed, the court retired for the evening. The next morning Banks’ counsel unsuccessfully moved for a mistrial based on the state’s use of its peremptory challenges.
An objection must be made at the time of an alleged error to preserve it for appeal. LSA-C.Cr.P. Art. 841(A). Banks failed to timely object.
Moreover, Banks’ argument on the merits relies on the outdated language in LSA-C.Cr.P. Art. 795(B). In 1990 the articles relating to peremptory challenges were amended to permit the exercise of peremptory challenges at any time prior to the swearing of the entire jury panel. LSA-C.Cr.P. Art. 795(B)(1). The amended articles applied to his January 1991 trial.
Thus, a party may “temporarily accept” a juror by declining to exercise the peremptory challenge when the prospective juror is first questioned and accepted, and then later exercise a peremptory challenge on that juror at any time prior to the swearing of the jury panel. In State v. Watts, 579 So.2d 931 (La.1991), the supreme court summarily granted a writ and reversed a trial court which refused to permit the exercise of a peremptory challenge after the juror had been “temporarily accepted and sworn” but prior to the swearing of the entire jury panel. The court said:
A juror temporarily accepted and sworn in accordance with LSA-C.Cr.P. Art. 788 may nevertheless be challenged peremptorily prior to the swearing of the jury panel in accordance with LSA-C.Cr.P. Art. 790. LSA-C.Cr.P. Art. 795(B)(1).
The trial court was correct in allowing the state to exercise the peremptory challenges before the entire panel had been sworn. This assignment of error lacks merit.
SEARCH AND SEIZURE
Banks also contends the trial court erred in admitting into evidence the piece of panties which was taken from his rear pocket in an allegedly illegal search and seizure.
Banks was arrested and then given a pat-down search. During the pat-down, the officers felt a bulky pocket, and subsequently removed the panties. Defendant argues that the limited scope of a search incident to an arrest only applies to dangerous weapons and does not include the discovery of evidence. We disagree.
Officers clearly had probable cause to believe that the defendant was the assailant. Probable cause to arrest exists when facts and circumstances within the arresting officer’s knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the person to be arrested has committed, or is committing, an offense. State v. Jarmon, 543 So.2d 93 (La.App. 1st Cir.1989) writ denied, 551 So.2d 1334 (La.1989).
The perpetrator’s description provided by the victim and her identification of defendant in a photographic lineup, together with his flight from the police, provided sufficient probable cause to arrest Banks.
Once lawfully arrested, the search was incidental to arrest and no warrant was needed to search the defendant. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Wilson, 467 So.2d 503 (La.1985). Further, po *839 lice may conduct a warrantless search of a person legally arrested so as to discover and seize evidence of the crime. State v. Elliott, 407 So.2d 659 (La.1981).
For these reasons, the search which produced the panties after the arrest was valid, and the trial court was proper in denying the motion to suppress.
DECREE
Because both assignments of error are meritless, defendant’s conviction and sentence are affirmed.
AFFIRMED.